302 So.2d 787 (1974)
Warner S. OLDS, Appellant,
v.
STATE of Florida, Appellee.
No. 74-132.
District Court of Appeal of Florida, Fourth District.
October 25, 1974.
Rehearing Denied November 25, 1974.
*788 Charles W. Musgrove and Nelson E. Bailey, West Palm Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Anthony J. Golden, Asst. Atty. Gen., West Palm Beach, for appellee.
WALDEN, Judge.
An attorney was adjudged to be guilty of contempt of court. He appeals. We reverse.
The judgment stemmed from the trial court's displeasure with the attorney's conduct in a homicide case. More exactly, the trial court found fault with the attorney's efforts to impeach a critical witness.
Matters came to a head with the appealed decision when the appellant made the last in a series of motions for a mistrial and said:
"MR. OLDS: Judge, comes now the defendant Clarence Perry and moves the Court for a mistrial. Incorporates all motions heretofore previously made, and incorporates it therein on the grounds that his Honor has laid down guidelines under sanctions of the Court, and has refused repeatedly to follow those sanctions as to the state attorney, but has in every case handcuffed the defendant.
"And I am frustrated in his defense he is getting, because of the Court's wrath. And I don't know the Court's  what the Court's reason is; I think the Court's frustration against the defense attorney, and he is getting ineffective assistance of counsel.
"Questions that go to a public hearing, questions that go to promises that are made by the state and to the letter are not allowed to come in before the jury.
"THE COURT: Mr. Olds, if you would have carried out your responsibilities as public defender and absolved yourself from one of these cases, you wouldn't have this problem today.
"This ruling of this Court is that you are going to he held in contempt right now, and your motion for mistrial is denied.
"Do you understand that?
"MR. OLDS: Yes, sir."
Following a lunch recess, the trial court announced that it had reconsidered the motion for mistrial and announced that same was granted. The court then more formally summed up the trial court's reasons for holding defense counsel in contempt:
"THE COURT: For the record, there is one matter to come before the Court, and I would like counsel to approach the bench, please.
"Prior to the granting of this motion for mistrial, I made specific rulings concerning questions that could be properly propounded to the witness, V.L. Odums, and strict instructions to counsel concerning these questions.
"My ruling was based on my finding that a conflict of interest existed in this cause through the improper representation of the office of the public defender of this witness and this defendant in this case, and the appointment of special public defender to advise the witness, V.L. Odums; and I further find that any questions would violate the witness's privileged communication between himself and his attorney, and could possibly tend to incriminate him in pending matters before this Court.
"And further, due to this representation of the witness by the public defender, *789 information and knowledge not ordinarily available to defense counsel became known.
"Subsequent to being repeatedly advised by this Court concerning the prohibition of this line of questioning, counsel for defendant did continuously and repeatedly ask and propound questions and violate the ruling of this Court.
"On being advised of these violations, counsel indicated he felt the Court was being unduly prejudiced to his client and moved for a mistrial.
"Mistrial has been granted, because in the opinion of the Court it would not have been in the best interest of justice to continue this present case.
"Therefore, it is the finding of the Court that you, Mr. Olds, are held summarily in direct contempt of this Court through your conduct, which has impeded the orderly administration of justice in this court."
Backgrounding, V.L. Odums and Clarence Perry were present at the scene of a homicide. Each was charged with first degree murder. The Public Defender was appointed to represent them. That office being multi-staffed, Bill Laswell was assigned to represent Odums. Appellant, Warner S. Olds, represented Perry.
Odums was presented first. He successfully negotiated a plea of guilty to the lesser offense of being an accessory after the fact and as punishment was placed upon probation for a period of two and one-half years.
After a considerable passage of time the State brought Perry to trial upon the charge of first degree murder, Perry having plead not guilty. The State chose to call Odums as a prosecution witness and he fingered Perry as the murderer with detailed testimony.
If ever a witness was ripe for impeachment and having his credibility destroyed before the jury, that witness was Odums. It may be gleaned from the State's examination and the defendant's abortive efforts to cross-examine, that Odums had made a series of contradictory pre-trial statements concerning critical events; that Odums had prior criminal convictions; and that, being charged with the very same crime of the first magnitude, Odums had merely received a slap on the wrist, which slap may have been the result of reciprocal promises.
And so, remembering the priorities and the obvious fact that at the head of the list was the necessity that Perry receive a due process trial, including the right to confront and examine his accusers, we look at his counsel's mandate. It is patent that defense counsel was obliged to impeach Odums by showing the foregoing matters to the jurors so that they might be in a position to judge the truthfulness of Odums. Otherwise, they might be misled into believing his account (in case it was false) and thereby wrongfully convict Perry, the seemingly forgotten man in this confrontation. Surely, Perry should not be penalized and deprived of his most substantial rights because of some real or fancied disqualification or disability on the part of his court appointed lawyer. Yet this was the route Perry's trial was taking until the trial court finally granted one of Perry's motions for a mistrial (and at the same time found Perry's lawyer guilty of contempt of court as above shown).
We digress to bring things into focus. Our appellate concern is whether the trial court erred in holding that Warner S. Olds was in contempt of court. The correctness of the trial court's evidentiary rulings is not an appellate issue and yet same is of necessary peripheral interest in understanding the trial court happenings, the attorney's courtroom performance and whether the strictures placed upon him were justified.
During the course of the attempted cross-examination of Odums by defense counsel it became apparent, and increasingly so as the events unrolled, that the trial court was concerned that Warner S. Olds *790 was violating or about to violate an attorney-client privilege existent between the witness, Odums, and the Public Defender's Office. The concern became such that the trial court appointed special counsel to represent and advise the witness, Odums.
Defense counsel continued to attempt to cross-examine Odums and was frustrated in nearly every material instance by the Court's rulings. While we commend the trial court's sensitivities and concerns, we must record in fairness that the restrictions imposed upon counsel and the bulk of the Court's rulings (we have not assessed them all) were based upon an erroneous concept of the law of evidence in the matter of attorney-client privilege. It follows, therefore, that the trial court was in error in believing that defense counsel was guilty of contumacious impropriety in attempting to conduct the cross-examination. To illustrate with several basic rulings adverse to Perry, these items were rejected:
1. A tape recording made by the Public Defender's Office of a prior statement made by the witness in the presence of the Public Defender and the prosecuting attorney was not admitted because of claimed confidentiality.
2. Testimony that the witness had been offered a "deal" by the State for pleading to a lower count and obtaining probation was disallowed. The court did allow for argument on these grounds if Mr. Olds produced some official statement of a promise; but when Mr. Olds attempted to lay a predicate for proof of a promise, he was precluded from doing so.
3. The public record of the witness' plea and his subsequent sentence into the record was not allowed into evidence.
4. The witness' prior statements to police officers concerning the details of the crime were not allowed into evidence.
In essence, these efforts were proper because the grounds of confidentiality ordinarily do not apply if a third party were present while the statements in question were being made. In Schetter v. Schetter, 239 So.2d 51 (4th D.C.A.Fla. 1970) the court held:
"Basic to the assertion of the attorney-client privilege is that the communication in question must have been made in confidence... ." Id. at 52.
The very term, attorney-client privilege, bespeaks protection of communications made between an attorney and his client alone. Ogden v. Groves, 241 So.2d 756 (1st D.C.A.Fla. 1970); see Annot. 16 A.L.R.3d 1050 (1967); 58 Am.Jur. Witnesses §§ 363, 492 (1948); 35 Fla.Jur. Witnesses § 144 (1961). A witness could hardly call up the attorney-client privilege for a statement made at a public gathering merely because he was making it to his lawyer. Indeed, in the case at hand Mr. Odums was making the statements in question to the prosecutor and the police officers. Further, it is reasonable to expect these matters could be discovered by any competent defense counsel.
It is axiomatic that public records cannot be withheld as confidential and thus the public record of the witness' plea and sentence was proper evidence for the jury.
The state regards this conflict problem as follows:
"He [Olds] failed to realize that, despite his sincere belief that there was no problem in the dual representation, an attorney should avoid not only impropriety, but the appearance of impropriety. (Canon 9, Code of Professional Responsibility). As the trial of Mr. Perry progressed, it became apparent that there was both.
"It became the Appellant's obligation to attempt to impeach a witness who was himself represented by the Appellant's office.
"... Despite this necessary limitation, the witness repeatedly admitted *791 he had lied in the past and that he had a very poor criminal record. It is clear from the record that the Appellant had established that the witness' credibility was subject to serious question. Therefore, despite the trial court's limitation of Appellant's cross-examination of the witness, the court's ruling was not so severe as to preclude the Appellant's performance of his duty as defense counsel to try to impeach the witness. The problem was created by the Appellant and, if he was frustrated by the limitations he found himself under, he had no one to blame but himself."
As shown, the state concedes that appellant was "sincere" in his actions and there is nothing to refute this. We do disagree that the problem was created by appellant and that he had no one to blame but himself. The court appointed him to represent Perry and the state elected to call Odums as a witness, leaving defense counsel as a victim of these circumstances. We also disagree with the suggestion that appellant had adequately impeached Odums. The tip of the impeachment iceberg was in fact revealed by the State. In this sense, it was an impeachment of its own witness, possibly undertaken to blunt the sting of the expected, but never allowed, cross-examination assault by appellant.
In sum, the appellant found himself in an unwelcome dilemma  somewhere between the rock and the hard place. On the one hand, the trial court had appointed him to officially represent Perry. It was his bounden duty as a lawyer and public defender office holder to represent Perry competently and zealously during the appointment; see 32 F.S.A. Code of Professional Responsibility, Canons 6 and 7 (1974). On the other hand, in providing these services he was at the same time apparently being accused of impropriety in violating Odums' secrets gained by a Public Defender who had earlier represented Odums around the time he negotiated his plea; see 32 F.S.A. Code of Professional Responsibility, Canons 4 and 9 (1974).
More vividly, appellant was tendered a choice. He could either stand silent and allow the testimony and credibility of Odums to go unchallenged per the court's ruling, or he could attempt to impeach Odums without exposing Odums' confidences and secrets. Appellant rejected the first alternative, and properly so, as it would have been detrimental to the defendant Perry, and in violation of the attorney's oath. He chose the latter alternative, and then protested the court's strict prohibitions and guidelines via motions for mistrial. This preserved the matter and provided a record basis for appellate review. In addition this choice appears to have earned him a judgment of contempt.
In order to approve appellant's conviction we should be able to point out the correct road he should have traveled and his material departures therefrom, which would constitute a contempt of court. We can not do so. For the kind of acts of counsel constituting contempt see generally 6 Fla.Jur. Contempt, § 12, (1956); 17 Am.Jur.2d Contempt, § 25 et seq., (1964); Kleinfeld v. State, 270 So.2d 22 (3d D.C.A.Fla. 1972), cert. den. 275 So.2d 251 (Fla. 1973); Vernell v. Gerstein, 212 So.2d 11 (3d D.C.A.Fla. 1968), cert. den. 222 So.2d 750 (Fla. 1969), cert. den. 396 U.S. 849, 90 S.Ct. 76, 24 L.Ed.2d 98 (1969).
Reflecting from the appellate atmosphere, distant from the heat and instant issues of the trial court forum, we opine that the problem, if there was one, could not be solved either by depriving Perry of his fair trial rights or by placing his counsel who sought to assure them in contempt. The solution as we see it, if the trial court felt the measure was warranted, was for it to remember that it had appointed appellant as Perry's trial counsel and that it retained control over the appointment at its pleasure. The trial court earlier indicated that at the time of its ruling the Public Defender should have absolved himself *792 from one of these cases, referring, we believe, to the Perry and Odums cases. Since the trial court had complete control over the appointment of the Public Defender and the length of such appointment we would suppose that it could rescind that appointment and appoint another if it wished. The fact that the trial court was aware of this discretion and authority is attested by its sua sponte decision to substitute court appointed counsel for the witness, Odums. And so the trial court, being of the mind it was, could have simply granted one of the many motions for mistrial, being careful of double jeopardy considerations, and then released appellant from his court appointment and responsibilities thereunder. New and independent defense counsel could then afford Perry a complete defense without restriction.
As desirable as a hard and fast general rule might be in this area, we have been unable to formulate one that would be applicable under all circumstances. It is foreseeable that under the Public Defender system such facts may recur. What happens when there are multiple indigent participants in a crime, all represented by the Public Defender, when one of the defendants earlier negotiates a plea and later turns up at trial as a cooperative State's witness against his former co-defendants? We do not believe that that fact alone automatically and instantly disqualifies or hamstrings the Public Defender in his examination of the witness or justifies a mistrial. Confidentiality rights may be waived or the Public Defender may not choose to examine into confidential areas. While we have recognized that the trial court may substitute a court appointed counsel in case of need, we feel that this should not be lightly undertaken because the rights of the person on trial must not be forgotten. It is no small matter to either discontinue a trial or to visit upon a defendant the possible disadvantage of changing lawyers in mid-trial. There must necessarily be a balancing of considerations. Finally, on this account, we recognize on the other hand that there may well be instances where matters reach an impasse, leaving no alternative but to relieve the Public Defender in a trial in order to afford the accused a fair trial and at the same time accord a witness the attorney-client confidentiality. Where the witness had privately given the Public Defender damaging information which he would be required to elicit in the instant trial, it would obviously be a conflict which would not be countenanced.
If there is a hint to be found that appellant was unduly aggressive or unmindful of the court's directions, same is not borne out by the record. Without doubt appellant was vigorous and zealous, and this under somewhat strained and provocative circumstances. However, it is indisputable that a lawyer should afford his client the best representation he can. He is duty bound to fully protect the interests of a client. The Supreme Court in In re McConnell, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962) held that:
"The arguments of a lawyer in presenting his client's case strenuously and persistently cannot amount to a contempt of court so long as the lawyer does not in some way create an obstruction which blocks the judge in the performance of his judicial duty." 370 U.S. at 236, 82 S.Ct. at 1292.
"While we appreciate the necessity for a judge to have the power to protect himself from actual obstruction in the courtroom ... it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases." Id.

See Lewison v. State, 193 So.2d 53 (4th D.C.A.Fla. 1966):
"In the instant case, appellant had a perfect right to seek the available remedies to protect the interests of his clients, and his action did not constitute contempt of court." Id. at 56.
See generally 3 Fla.Jur. Attorneys at Law, § 33 (1955).
*793 The contempt power should be approached with care and circumspection and should be cautiously and sparingly exercised. Harper v. State, 217 So.2d 591 (4th D.C.A.Fla. 1968). It is our conclusion and decision that appellant Warner S. Olds was erroneously adjudged in contempt of court.
Reversed.
CROSS and DOWNEY, JJ., concur.