351 So.2d 47 (1977)
Alan E. KRUEGER, Appellant,
v.
STATE of Florida, Appellee.
No. 76-868.
District Court of Appeal of Florida, Third District.
August 2, 1977.
Rehearing Denied November 16, 1977.
James McGuirk, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Arnold R. Ginsberg, Special Asst. Atty. Gen., for appellee.
Before HAVERFIELD, NATHAN and HUBBART, JJ.
NATHAN, Judge.
Appellant Alan E. Krueger was found guilty of direct criminal contempt in a summary proceeding; he was fined and sentenced to a period of confinement in the Dade County Jail. Krueger, an Assistant State Attorney, had appeared as prosecutor at a hearing on a motion for continuance brought by the defendant in a criminal case. Appellant advised the court that he had no objection to a continuance, inasmuch as the State intended to appeal the court's prior dismissal of one of the counts against the defendant.
The trial court record of the ensuing colloquy reads as follows:

*48 "MR. KRUEGER: I have no objection [to a continuance] Your Honor. In fact, our office is going to take an appeal, a written order on Count 1. We will request a stay. I got it typed up.
THE COURT: I am not going to grant any stay, for it is frivolous. Set it over two weeks on the motion of the defendant. April 26.
In fact, frivolous is too good a word for it. I would say absurd would be better.
MR. KRUEGER: You are entitled to your opinion, Your Honor.
THE COURT: Thank you. I appreciate that. Mr. Krueger, don't leave this room.
* * * * * *
THE COURT: Mr. Kroeger [sic], pursuant to Rule 3.830 of the Florida Rules of Criminal Procedure, I inform you that you are accused of direct criminal contempt of this Court, by virtue of the statement made in the presence of the Court, that, quote, "The Court is entitled to its own opinion", or, I believe, "You are entitled to your own opinion", and the manner in which the statement was made.
Do you have any cause to show why you should not be adjudged guilty for contempt?
MR. KRUEGER: Yes, Your Honor. I do not feel that I showed the Court any disrespect. I merely was responding to the fact that the Court was deprecating the legitimacy of the State's argument, and I felt that, as opposed to an absolute statement of fact in the Court's opinion, I had a right to give the State's opinion or the State's position, as distinguished from the opinion of the Court.
I don't feel I said anything that was either improper or that in any way negatively reflected upon the Court.
Appellant was thereafter adjudged to be in contempt of court. The trial judge filed a written judgment of contempt on April 16, 1976, finding appellant guilty of direct criminal contempt for "behavior unbecoming an officer of the court."
In an additional untitled order dated May 5, 1976, the court found that appellant's statement, to wit: "You are entitled to your opinion, Your Honor," was made "in a loud, rude, impertinent and thoroughly contemptuous manner while Mr. Krueger, having turned, was walking toward the door with his back to the court."
After filing his notice of appeal, appellant filed a Motion to Correct the Trial Court Order and for Leave to Correct and Complete the Record on Appeal, asserting that the trial court transcript did not reflect the physical acts of the parties. An evidentiary hearing was subsequently conducted, at which time appellant testified that he had begun to leave the courtroom after the trial judge ruled that the defendant's request for a continuance would be granted, since the court had disposed of all pending matters. Appellant stated that he had taken several steps toward the rear of the room, whereupon the trial judge remarked, "In fact, frivolous is too good a word for it. I would say absurd would be better." According to appellant's testimony, he then turned toward the trial judge and made his allegedly contumacious statement without changing his tone of voice.
The trial judge refused to hear any further testimony at the evidentiary hearing, inasmuch as appellant's version of the incident conflicted with the judge's own findings of fact. However, the court did rule that the affidavits of appellant and another Assistant State Attorney who was in the courtroom at the time of purported contempt could be included in the Supplemental Record on Appeal.
Appellant's affidavit reiterates the testimony which he gave at the evidentiary hearing; the affidavit of the other State Attorney similarly reflects that appellant faced the trial court judge and addressed him in ordinary fashion after the judge had remarked that the State's appeal was absurd.
Appellant contends that no contempt actually occurred and that he was not afforded the procedural protections to which he was entitled under Rule 3.830, Fla.R. *49 Crim.P., which governs summary criminal contempt procedure.
To say the least, we are faced here with a rather difficult and atypical case of direct criminal contempt. There were no continuing attempts to disrupt court proceedings, no wilful disobedience of court instructions, nor any foul epithets unleashed against the trial judge. Rather, a facially neutral statement was made by appellant and apparently ruled contemptuous because of the manner in which it was spoken.
Our problem on review is compounded by the fact that the transcripts in no way bear witness as to appellant's demeanor at the time of the allegedly offensive conduct. It is true that the trial judge's supplemental order recites his finding that appellant's remark was made in a rude and impertinent fashion. Further, a judgment of contempt is clothed with a presumption of correctness. Belote v. Slye, 206 So.2d 276 (Fla.1st DCA 1968). On the other hand, we are mindful of the admonition that the power to punish for criminal contempt should be exercised cautiously and sparingly. Carroll v. State, 327 So.2d 881 (Fla.3d DCA 1976). It is not to be used to avenge personal affronts, but to punish assaults or aspersions upon the authority and dignity of a court or judge. Ex parte Earman, 85 Fla. 297, 95 So. 755 (1923).
"[I]f the matter complained of as constituting contempt, when fairly interpreted, does not have a reasonable tendency to degrade or to embarrass or hinder . . a judge in performing his own duty, or to affect a mind of reasonable fortitude, it is not a criminal contempt for which imprisonment may be lawfully adjudicated, particularly when an intent to offend is denied on oath.
Generally it is the nature and reasonable tendencies of the matter complained of that controls; and, if the matter is of doubtful tendency or might or might not be considered ambiguous as to its general or specific purpose, the circumstances under which the thing was done or in which its consequences are to appear, may be considered in determining the reasonable tendency of the matter to affect judicial authority or dignity... ." Ex parte Biggers, 85 Fla. 322, 343-44, 95 So. 763, 769 (1923).
The Florida Supreme Court's language in Biggers, supra, is most appropriate for application here, since we are faced with a statement of "doubtful tendencies." Our review compels the conclusion that the allegedly offensive remark did not have a reasonable tendency to degrade the integrity of the court or hinder judicial functions when fairly interpreted. Thus, we hold that appellant's conduct was not contemptuous as a matter of law under the facts of this case.
We feel constrained to note that while it is possible that appellant's comportment was primarily responsible for the finding of contempt rather than the comment itself, this is not manifested in the transcripts of the hearing. Instead, it objectively appears that appellant responded with relative moderation to a direct attack upon the position which he was advocating. This interpretation is supported by the affidavits which were submitted by appellant and his fellow State Attorney. Thus, we are left in the unfortunate position of having to essentially weigh the veracity of contradictory recitations of the offending occurrence.
In dealing with a similar case of summary contempt, the Supreme Court of California observed that there is a need for independent objective evidence to support the trial court's finding:
"Broadly speaking, judges are empowered to punish summarily for contempt of court in order to facilitate the orderly administration of justice. Disobedience of court orders tends to lessen the effect of those orders; intemperate behavior in the course of a trial ... lessens the mastery of the trial judge over the process of the proceedings and thus tends to obstruct the course of the trial. Considerable summary power ... is therefore vested in judges. If that power is not wisely exercised it can readily become an instrument of oppression. In a summary contempt proceeding the judge *50 who metes out the punishment is usually the injured party and the prosecutor as well. Since such a situation invites caprice, appellate courts almost without exception require that the order adjudging a person in direct contempt of court recite in detail the facts constituting the alleged transgression rather than the bare conclusions of the trial judge.. . This rule in itself demonstrates, if only by implication, that some objective support must be present to support the order of contempt. If a trial judge had only to state that the contemnor raised his voice and twisted his features, no contempt order could be attacked. The well recognized principle that in a criminal contempt proceeding the accused is afforded many of the protections provided in regular criminal cases would be rendered meaningless ... and the burden of proof would be sustained by the subjective reactions of the offended judicial officer." Gallagher v. Municipal Court of City of Los Angeles, 31 Cal.2d 784, 192 P.2d 905, 912 (1948) (Citations omitted.) (Emphasis added.)
This statement is consistent with the law and policy of the State of Florida. Our courts also require that an accused criminal contemnor be afforded many of the basic constitutional rights provided in regular criminal cases, Aaron v. State, 284 So.2d 673 (Fla. 1973); and Rule 3.830, Fla.R. Crim.P., provides that the judgment of guilt of contempt must contain a recital of those facts upon which the adjudication of guilt is based.
Thus, where the judgment of contempt is not objectively supported by the court transcripts, we hold that it is procedurally defective. Given the fact that the hearing before the trial judge in this action had for the most part been concluded prior to the allegedly contumacious conduct, it would seem that there was no need for summary punishment in this instance. See U.S. v. Wilson, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975). Without advocating recusal by trial judges in cases of direct criminal contempt, we find that in cases such as this, where an alleged personal attack on a judge is not objectively supported by the record, summary punishment by the offended judge is not appropriate. Moreover, if a trial judge should become personally embroiled with a purported contemnor, and another judge should be appointed to hear the charges. See Offutt v. U.S., 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954). At that time, the offended judge as well as others may testify regarding the claimed contempt.
Reversed.