PER CURIAM.
Appellants, Martin and Doyle, were convicted of indirect criminal contempt resulting from an interview with Carol Moore relative to her certification of an affidavit that Appellant Martin felt was a crucial piece of evidence in criminal charges pending against his wife.
The first trial of Mrs. Martin resulted in a mistrial when the jury was unable to reach a verdict. The State indicated its intent to retry the case and the Appellant, Thomas Allen Martin, consulted his wife’s attorney relative to the propriety of interviewing Mrs. Moore who was then living in Miami, Florida. After receiving legal advice Martin, an investigator with the Es-cambia County Sheriff’s Department, telephoned Appellant Doyle, a friend and fellow officer with the Tallahassee Police Department, advising him of the trip and of his intent to spend a night in Tallahassee. Doyle agreed to help with the driving to Miami and suggested that in order to save on gasoline they take his smaller car. They arrived in Miami late Saturday night on July 22,1978, and the next morning went to the home of Mrs. Moore.
Martin introduced himself as an investigator for the Escambia County Sheriff’s Department. In the course of the introduction he produced identification including his badge and informed Mrs. Moore that he was the husband of Sue Martin. He introduced his friend Joe Doyle as an investigator from Tallahassee and informed Mrs. Moore of the criminal action pending against his wife and of certain suspicions he had relative to the notarized statement. After producing a copy of the document he told her that everyone in Pensacola knew that the instrument was back-dated and that he was looking for a way to have the charges dropped against his wife. Mrs. Moore admitted that the affiant had not been sworn at the time he executed the document and Martin made several inquiries relative to the actual date of the signing; stating that if, in fact, an investigation by the State disclosed that his suspicions were correct, Mrs. Moore could be charged with a third-degree felony. In the course of conversation Mrs. Moore was told that if she would give a statement that the document had not been notarized correctly, Martin and his wife would give her a written statement saying that they would not attempt to press charges. When Mrs. Moore persisted in her assertion that the date appearing on the document was the true date of notarization, Appellant Doyle, who had remained silent throughout most of the conversation, told her that by not swearing the affiant, she was guilty of a third-degree felony and that there was a good chance that the State would file charges against her. In the course of Doyle’s conversation Mrs. Moore was asked if she would give a simple statement to the effect that the questioned document was not given under oath. Upon her refusal to give even such a limited statement, Doyle thanked her for her time, shook hands with Mr. Moore and both appellants left.
While there was pressure on Mrs. Moore to change her story in accordance with what Martin felt to be the true facts, the purpose of the visit was never concealed, and the interview was conducted in a low-key, professional manner. Mrs. Moore testified that Appellant Martin appeared flustered, disappointed and on the verge of losing his temper but he restrained himself and thereafter remained silent while Doyle continued with the conversation.
Martin, after returning from the trip to Miami, filed a complaint with the Office of the Governor seeking an investigation of the State Attorney’s Office. Mr. Moore, in the meantime, got in contact with Mr. Nelson, the affiant, and Mr. Harry L. Harper an Assistant State Attorney for Escambia County, encouraging them to do something about the interview with his wife. In May of 1979, approximately nine months after the July 23, 1978 interview, Mr. Harper filed an amended answer to discovery listing, for the first time, Carol Moore and Walter Moore as witnesses in the State’s case against Susan Martin. On June 15, 1979, a petition for order to show cause was filed against the appellants. The court de *1014 nied a motion to dismiss and the appellants filed a motion to appoint an Acting State Attorney, alleging strong personal differences between Appellant Martin and State Attorney Curtis Golden, who, on the previous date, had filed a personal libel suit against Martin. The motion was denied as was a request for trial by jury. The latter denial was based upon the State’s assurance that in the event of a finding of guilty the State would request a penalty of less than six months and the court’s agreement that any punishment imposed would not exceed such threshold. Both appellants at trial admitted their contact with Mrs. Moore, but denied any attempt to coerce her into giving a false statement and any intent to obstruct justice. Appellants were found guilty of indirect criminal contempt and the court immediately proceeded to pronounce sentence over the defendants’ objections. The defendants’ request for an opportunity to present evidence of mitigating circumstances prior to sentencing was denied. The court, in denying said motion, advised defense counsel that if the defendants chose to subsequently present mitigating circumstances, a hearing would be set for that purpose and the court would then review its judgment. Appellant Doyle was sentenced to two months and Appellant Martin to three months, in the county jail. The clerk entered the adjudication of commitment, which contained no recital of facts constituting the contempt of which the appellants were adjudicated guilty. No written judgment of guilty was ever entered by the trial judge. Both appellants filed timely appeals and the matter is now properly before this court for consideration.
It is established law in Florida that great due process procedural safeguards should be accorded one accused of indirect criminal contempt. The procedure to be followed in such proceedings is set forth in Florida Rules of Criminal Procedure 3.840 which requires that at the conclusion of the hearing to determine the guilt or innocence of the defendant, the judge shall sign and enter of record a judgment of guilty or not guilty. There must be included in a judgment of guilt a recital of the facts constituting the contempt of which the defendant has been found and adjudicated guilty. Failure to comply with this rule is reversible error requiring remand to the lower court for entry of a proper judgment and sentence. Bryant v. State, 363 So.2d 1141 (Fla. 1st DCA 1978); McKnight v. State, 325 So.2d 79 (Fla. 4th DCA 1976); Davis v. State, 261 So.2d 188 (Fla. 1st DCA 1972), cert. denied, 265 So.2d 51 (Fla.1972). Such would normally be the disposition of this court. However, we find that aside from procedural defects, the judgment and sentences in this instance must be reversed on the merits for reasons hereinafter set forth.
Constructive contempt is an act done not in the presence of the court or of a judge acting judicially, but at a distance under circumstances that reasonably tend to degrade the court or the judge as a judicial officer, or to obstruct, interrupt, prevent, or embarrass the administration of justice by the court. The proceeding is maintained solely and simply to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court. Bryant v. State, supra; Ex parte Earman, 95 So. 755 (Fla.1923). Courts recognize that the power to punish for contempt is extraordinary and far-reaching and, unless used cautiously and prudently, can be subject to abuse. Ray v. State, 352 So.2d 110 (Fla. 1st DCA 1977); Krueger v. State, 351 So.2d 47 (Fla. 3rd DCA 1977); Olds v. State, 302 So.2d 787 (Fla. 4th DCA 1974). The power of the court to punish for contempt is allowed, not to satisfy an offended individual, but to vindicate the authority and dignity of the judicial office; and the penalty should have reference to the nature and enormity of the act complained of and to the wrong done to the court. Ex parte Earman, supra. Mrs. Moore was not a witness to any court action ,at the time she was contacted. She had not been called or listed as a witness in the first trial of Mrs. Martin and, in light of her limited role in the scenario, it was dubious whether she would be called as a witness for the State in any future trials. There was no outstanding *1015 court order prohibiting or restricting contact with her and it was only after Appellant Martin received assurance from his wife’s attorney that there was no impropriety in an interview that he contacted her. We conclude that under the circumstances the evidence is insufficient to sustain a finding that the appellants’ trip to Miami was “to pollute the free flow and divest the free flow of the channels of justice.” In criminal contempt proceedings the contemnor is presumed to be innocent until proved guilty beyond a reasonable doubt. Demetree v. State, 89 So.2d 498 (Fla.1956). Within the guidelines applicable to indirect criminal contempt proceedings we do not feel that the appellants’ guilt has been demonstrated to the exclusion of a reasonable doubt.
The order of contempt and the sentences imposed for said contempt are vacated.
ROBERT P. SMITH and SHAW, JJ., concur.
BOOTH, J., dissenting with opinion.