954 So.2d 1191 (2007)
Herbert SMITH, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-2474.
District Court of Appeal of Florida, Third District.
April 18, 2007.
*1192 Peter Raben, Coconut Grove, for appellant.
Bill McCollum, Attorney General, Orlando, and Douglas J. Glaid, Assistant Attorney General, Fort Lauderdale, for appellee.
Before RAMIREZ, WELLS, and LAGOA, JJ.
LAGOA, J.
The appellant, Herbert Smith ("Smith"), appeals an order finding him guilty of two counts of direct criminal contempt for his behavior at two non-jury hearings before the Honorable Scott J. Silverman, Circuit Court Judge of the Eleventh Judicial Circuit (the "Judge"). For the following reasons, we reverse.
I. FACTUAL AND PROCEDURAL HISTORY
On June 2, 2004, Smith, a lawyer with the Public Defender's Office, was present in the courtroom in his capacity as the supervisor for the four (4) public defenders assigned to the Judge's courtroom. While Smith was present, the Judge ordered that the Public Defender's Office appear as counsel for a defendant who had filed a motion for DNA testing. Smith informed the Judge that because of the defendant's claim of ineffectiveness of counsel at trial, the Public Defender's Office, which had previously represented the defendant, could not be appointed to represent the defendant. The following exchange took place:
THE JUDGE: He is happy with you.
If you want to provide me with some caselaw; I don't know that is a conflict.
MR. SMITH: Mr. Alvarez says that
THE JUDGE: Stop, provide me some caselaw.
File a motion, you may want to check with the Florida Hot Line, to see if that is an actual conflict.
By looking at its face, he disagrees with you, he is not happy with everything that you have done.
If you think that is a conflict, provide me with some caselaw, and I'll read it; in the meantime, you are still on the case. If you want, I'll give you a date.
MR. SMITH: How about Friday?
THE JUDGE: Friday is fine.
At the June 4th hearing, Smith informed the Judge that the appointment of counsel was discretionary as the defendant did not request counsel in his motion. The following exchange occurred, much of which formed the basis of the later charges of direct criminal contempt against Smith:
THE JUDGE: Did I ask you to research my question to you? What caselaw do you have for the court? You can answer my question.
MR. SMITH: I don't have any caselaw, because I found out Mr. Alvarez never asked you for the appointment of counsel. If you look at the motion, he has never asked you for appointment of counsel; it is completely, discretionary, when the court appoints a lawyer. It is a setup, when you appoint a lawyer from the P.D.'s office, when he is claiming that our office is ineffective
THE JUDGE: He never said you were ineffective.
Don't argue with me, and don't stump [sic] your foot, either. We went through this the other day; did we not?
MR. SMITH: The court has an interpretation of words that is different, than the common understanding of words.

*1193 THE JUDGE: My question is, didn't we go through this the other day?
MR. SMITH: Your question, you have a different opinion with what he, Mr. Alvarez, wrote. You questioned him about the P.D., he said we were ineffective
THE JUDGE: Did he write that in his motion?
Did he use the word ineffective?
MR. SMITH: We have gone over that, Judge.
THE JUDGE: You seem to want to go over that again.
MR. SMITH: No, I don't want to go over that again, I am telling you, I don't want to represent Mr. Alvarez, because we feel this is a setup.
THE JUDGE: A setup? How can you say it is a setup?
MR. SMITH: He claims we would be ineffective, if you appoint us. I don't think that is fair to us.
THE JUDGE: If he does that, you can file something.
I asked you to file something today, I asked you to research it today, and you didn't do that.
MR. SMITH: I did that.
THE JUDGE: And you didn't find a Statute, at all?
MR. SMITH: The court is not listening to me.
THE JUDGE: You are not listening to me.
Did you find any Statute
MR. SMITH: I did not.
THE COURT: Don't talk over me. Don't turn your back on me, Mr. Smith, this is the last time I am going to tell you, don't do it.
A final hearing was scheduled for June 8th during which Smith presented his arguments to the Judge. On July 20, 2004, the Judge discharged the Public Defender's Office, finding that he first needed to make a determination as to the validity of the defendant's motion before appointing counsel and admitting that he "was in error in that respect [and] the court [was] now correcting its own error."
On September 30, 2004, the Judge issued an Order to Show Cause charging Smith with six counts of criminal contempt, all of which related to Smith's behavior at the June 4th and June 8th hearings.[1] Specifically, Count V alleged that at the June 4th hearing Smith "argued with the court, interrupted the court, stomped his foot, and turned his back on the court twice during his argument (once even after being warned by the court not to turn his back on the court)." Count VI alleged that at the June 4th hearing the "Court directed [Smith] to prepare a written Memorandum of Law" and that Smith "disobeyed and violated the Court's direct order by not filing or presenting this court with a written Memorandum of Law" at the June 8th hearing.[2]
At the subsequent trial, the trial court heard testimony from Smith, the Judge, and the Judge's bailiff. The trial court found Smith guilty of Count V finding that Smith's actions at the June 4th hearing of "interrupting the court, turning his back in the court and stomping his foot, crossed the line" and that Smith's actions "were . . . deliberately intended to disrupt the *1194 court proceedings and to embarrass the court." The trial court also found Smith guilty of Count VI finding that "it could not be clearer . . . that Judge Silverman, on June 4, 2004, ordered Herbert Smith to write a memorandum of law for the June 8, 2004, hearing" and that Smith "intentionally violated an unambiguous direct court order" when he failed to file a written memorandum on June 8, 2004. This appeal ensued.
II. STANDARD OF REVIEW
We review a finding of criminal contempt based upon an attorney's misconduct under an abuse of discretion standard. Rudolph v. State, 832 So.2d 826 (Fla. 3d DCA 2002). While a judgment of contempt is entitled to a presumption of correctness, it must be supported by the record. Berman v. State, 751 So.2d 612 (Fla. 4th DCA 1999); Krueger v. State, 351 So.2d 47 (Fla. 3d DCA 1977).
III. ANALYSIS
A trial court possesses the inherent authority to punish for criminal contempt, although this power "should be exercised cautiously and sparingly." Carroll v. State, 327 So.2d 881, 882 (Fla. 3d DCA 1976). See also Fla. R.Crim. P. 3.830 (Direct Criminal Contempt); Fla. R.Crim. P. 3.840 (Indirect Criminal Contempt). The purpose of criminal contempt is "to punish assaults or aspersions upon the authority and dignity of a court or judge", not to avenge personal affronts. Krueger, 351 So.2d at 49. A finding of direct criminal contempt may be based upon either a violation of an order of the court or an act which is facially contemptuous. Rudolph, 832 So.2d at 828. Contempt has been defined by the Florida Supreme Court as follows:
[A]ny act which is calculated to embarrass, hinder, or obstruct the court in the administration of justice, or which is calculated to lessen its authority or its dignity, is a contempt. The test is not the physical propinquity of the act to the court, but its tendency to directly affect the administration of justice.
Ex parte Crews, 127 Fla. 381, 173 So. 275, 279 (1937) (citations omitted).
When a finding of contempt is based upon a violation of a court order, that order must be one which clearly and definitely makes the person aware of its command. Barnes v. State, 588 So.2d 1076, 1077 (Fla. 4th DCA 1991); American Pioneer Cas. Ins. Co. v. Henrion, 523 So.2d 776 (Fla. 4th DCA 1988); Lawrence v. Lawrence, 384 So.2d 279 (Fla. 4th DCA 1980); Kranis v. Kranis, 313 So.2d 135 (Fla. 3d DCA 1975). Moreover, there must be evidence of the individual's intent to disobey the court's order, or "that he or she was guilty of such gross dereliction that the intent will be presumed." Barnes, 588 So.2d at 1077. Finally, this intent must be proven beyond a reasonable doubt. Id.
Based upon the record before us, we find that Smith's behavior, while discourteous at times, did not meet the standard necessary for a finding of direct criminal contempt. In the instant case, there exists no proof beyond a reasonable doubt that Smith intended to disobey any court order or that he was guilty of such gross dereliction that the intent can be presumed. First, the record reveals that once warned by the Judge not to stomp his foot, Smith did not do so again. Second, although Smith did turn his back on the Judge after the Judge told him not to do so for a second time, the record indicates that the Judge was speaking to Smith's client, not Smith, when Smith turned his *1195 back.[3] Additionally, once warned by the Judge to stop interrupting him, there is no indication in the record that Smith continued to speak over the Judge. Accordingly, a review of the record shows that Smith ceased all offending behavior once instructed to do so by the Judge. Based upon these facts, there is simply insufficient evidence to prove beyond a reasonable doubt that Smith intended to disrupt court proceedings or embarrass the court. Cf. Rudolph, 832 So.2d at 828 (contempt affirmed where attorney discussed, in front of jury, matter which had been prohibited by judge); In re Weinstein, 518 So.2d 1370 (Fla. 4th DCA 1988) (in civil jury trial, attorney's failure to stand when making objections after being ordered to do so was a willful disobedience of a court order and an affront to the court's authority).
Similarly, the finding of contempt based upon Smith's failure to produce a written memorandum cannot be supported on this record. First, we find that the Judge's statement is too vague to be characterized as a clear directive when he merely indicated "I'll allow you to write a memorandum of law, that you claim that is an issue." Second, and more significant, is the fact that at the June 8th hearing Smith presented a thorough and comprehensive analysis of the relevant statutes and case law; so extensive, in fact, that the Judge stated at the conclusion of the hearing that Smith "raised some good points." Indeed, the Judge never asked for, or even addressed the issue of the written memorandum. Again, given the record before us, we find insufficient evidence that Smith intentionally disobeyed a direct order of the court, a necessary requirement for a finding of contempt.
Accordingly, we reverse the findings of criminal contempt as to Counts V and VI and remand with directions to vacate the judgment.
Reversed and remanded.
NOTES
[1] Because Smith was found not guilty of Counts I-IV, we only address Counts V and VI of the Order.
[2] At the conclusion of the June 4th hearing, the following exchange took place:

THE COURT: I'll allow you to write a Memorandum of Law, that you claim that is an issue. That is an order; am I clear?
MR. SMITH: I have no doubt that I am clear on what you have said.
[3] The following exchange occurred at the June 4 hearing:

THE COURT: Do you want a lawyer to be appointed?
Don't turn your back on me.
Don't turn your back on me, this is the second time I have told you; don't do it.
Do you want a lawyer to represent you?
THE DEFENDANT: Yes.
THE COURT: Do you want a Public Defender to represent you?
THE DEFENDANT: I don't mind, sir.
THE COURT: Yes, or no?
THE DEFENDANT: Yes.