# Third District Court of Appeal

## State of Florida

Opinion filed January 25, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D19-0090
Lower Tribunal Nos. 16-2776; 18-1081
_____

**J.A., a Juvenile,**
Petitioner,

vs.

**Kevin Housel, etc., et al.,**
Respondents.

A case of Original Jurisdiction-Habeas Corpus.

Carlos J. Martinez, Public Defender, and Jeffrey Paul DeSousa, Assistant Public Defender, for petitioner.

Ashley Brooke Moody, Attorney General, and David Llanes, Assistant Attorney General, for respondent The State of Florida.

Before LOGUE and MILLER, JJ., and SUAREZ, Senior Judge.

MILLER, J.

Petitioner, J.A., a juvenile, has applied for the issuance of a writ of habeas corpus directed at the respondent, Kevin Housel, as Regional Director at Florida Department of Juvenile Justice. The petition alleges that J.A. is unlawfully detained in the custody of the Department of Juvenile Justice pursuant to a trial court order finding ten instances of indirect criminal contempt and imposing a sentence of 100 days in secure detention. J.A. premises the application upon allegations of procedural deficiencies in the proceedings below and a legal prohibition on imposing consecutive sentences, as the instances of contempt identified constitute a single, continuous act. For the reasons set forth below, we deny the petition.

**FACTUAL BACKGROUND AND TRIAL COURT PROCEEDINGS**

On February 6, 2018, the circuit court placed J.A. on probation for petit theft and possession of cannabis. Pursuant to the terms of the probation, J.A. was required by written order to live at her mother's residence and "accept reasonable controls and discipline in that home." While on probation, J.A. was charged with committing a new offense, possession of a controlled substance. On October 9, 2018, at a status conference on the probation violation, following the issuance of numerous pickup orders, the lower court entered an order entitled "Do Not Run Order." The order required J.A. to remain living at her mother's home "unless otherwise ordered" by the court. The order contained the following provisions:

> The Child/Respondent is put on notice both verbally and by virtue of this Order that if a Petition for Rule to Show Cause is issued, a hearing

2

may be held on whether the Child/Respondent shall be deemed guilty of contempt.

The Child/Respondent is put on notice that pursuant to F.S. 985.037, Fla[.] Stat. (2017), the child is facing five (5) days for the first day that the Child/Respondent is on run, and no more than fifteen (15) days for each subsequent day. Each day on run is a separate offense of contempt.

(emphasis supplied).

On the evening of December 26, 2018, J.A. left her home without permission. J.A.'s mother was unable to ascertain her child's whereabouts, and on December 27, 2018, she filed a missing person's report. On December 28, 2018, the trial court entered a pickup order for J.A. J.A.'s location remained unknown until January 4, 2019. On that day, members of the Homestead Police Department discovered J.A. at the Everglades Motel located at 605 South Krome Avenue in Miami-Dade County, Florida. J.A. was taken into custody pursuant to the terms of the pickup order.

On January 7, 2019, the State filed a sworn Petition for Rule to Show Cause, seeking to commence indirect criminal contempt proceedings against J.A. The petition reflected that J.A. had previously been held in indirect contempt for violating the circuit court's Do Not Run Order and sentenced to twenty days in secure detention. It further set forth a recitation of the essential facts upon which the State relied to support a finding of indirect criminal contempt. On the same date, the trial court issued an order to show cause as to why J.A. should not be held in

3

contempt of court for violating the terms of the Do Not Run Order. The sworn petition, filed by the State, was attached to the show cause order, and the facts alleged therein were incorporated into the order by reference. J.A. was further ordered to appear before the trial court on January 10, 2019 for an indirect criminal contempt hearing.

On January 10, 2019, the trial court conducted a full evidentiary hearing on the allegations set forth within the petition and incorporated into the show cause order. At the conclusion of the hearing, the trial court found J.A. to be in contempt of court for ten separate violations of the Do Not Run Order. The court reasoned that each day J.A. failed and refused to remain at home constituted a separate violation of court order, punishable as an individual act. As it was not her first adjudication of contempt, J.A. was sentenced to ten days in secure detention for each violation, all sentences to run consecutive, for a total of 100 days.

## LEGAL ANALYSIS

We review a finding of criminal contempt under an abuse of discretion standard. Smith v. State, 954 So. 2d 1191, 1194 (Fla. 3d DCA 2007). "While a judgment of contempt is entitled to a presumption of correctness, it must be supported by the record." Id., citing Berman v. State, 751 So. 2d 612 (Fla. 4th DCA 1999) and Krueger v. State, 351 So. 2d 47 (Fla. 3d DCA 1977).

4

We review the legal issues presented *de novo*. Huber v. Disaster Sols., LLC, 180 So. 3d 1145, 1148 (Fla. 4th DCA 2015). Indirect criminal contempt proceedings must adhere to the procedural due process requirements enumerated in Florida Rule of Juvenile Procedure 8.150 and section 985.037, Florida Statutes (2019). See A.P. v. State, 215 So. 3d 662, 662 (Fla. 5th DCA 2017); K.M. v. State, 962 So. 2d 969 (Fla. 4th DCA 2007).

J.A. contends that the order to show cause was deficient pursuant to Florida Rule of Juvenile Procedure 8.150. Rule 8.150(c) provides, in pertinent part:

> An indirect contempt may be prosecuted in the following manner:
>
> (2) *Order to Show Cause.* On affidavit of any person having personal knowledge of the facts, the court may issue and sign an order to show cause. The order must state the essential facts constituting the contempt charged and require the child to appear before the court to show cause why the child should not be held in contempt of court . . . The order must specify the time and place of the hearing, with a reasonable time allowed for the preparation of a defense after service of the order on the child. It must be served in the same manner as a summons. Nothing herein shall be construed to prevent the child from waiving the service of process.

In the instant case, although the trial court entitled the order to show cause "Rule to Show Cause," the court complied with all of the delineated procedural requirements. Prior to issuance, the lower court received an affidavit from the State alleging the essential facts constituting contempt. The court then signed the order to show cause, including all of the essential facts by incorporation and attachment. J.A.

5

was properly served with the order. Counsel was appointed and a hearing scheduled. A full evidentiary hearing was convened and recorded. J.A. was permitted to testify in her own defense. As such, we conclude that due process was properly afforded. See Fla. R. Juv. P. 8.150(c)(5);[1] § 985.037, Fla. Stat. (2019).[2]

J.A. further contends that the act of failing to remain at home for ten successive days constitutes, at most, a single act of contempt, thus, the imposition of a ten separate consecutive sentences is illegal. The statute governing juvenile contempt proceedings provides, in relevant part:

> (1) CONTEMPT OF COURT; LEGISLATIVE INTENT.-The court may punish any child for contempt for interfering with the court or with court administration, or for violating any provision of this chapter or order of the court relative thereto. It is the intent of the Legislature that the court restrict and limit the use of contempt powers with respect to

---

[1] Rule 8.150(c)(5) provides: "At the hearing, the child has the following rights: (A) The right to be represented by legal counsel. (B) The right to testify in the child's own defense. (C) The right to confront witnesses. (D) The right to subpoena and present witnesses. (E) The right to have the hearing recorded and a copy of such recording. (F) The right to have a transcript of the proceeding. (G) The right to appeal."

[2] Section 985.037(4)(b) provides: "If a child is charged with indirect contempt of court, the court must hold a hearing within 24 hours to determine whether the child committed indirect contempt of a valid court order. At the hearing, the following due process rights must be provided to the child: [1] Right to a copy of the order to show cause alleging facts supporting the contempt charge. [2] Right to an explanation of the nature and the consequences of the proceedings. [3] Right to legal counsel and the right to have legal counsel appointed by the court . . . [4] Right to confront witnesses. [5] Right to present witnesses. [6] Right to have a transcript or record of the proceeding. [7] Right to appeal to an appropriate court."

commitment of a child to a secure facility. A child who commits direct contempt of court or indirect contempt of a valid court order may be taken into custody and ordered to serve an alternative sanction or placed in a secure facility, as authorized in this section, by order of the court.

(2) PLACEMENT IN A SECURE FACILITY.-A child may be placed in a secure facility for purposes of punishment for contempt of court if alternative sanctions are unavailable or inappropriate, or if the child has already been ordered to serve an alternative sanction but failed to comply with the sanction. A delinquent child who has been held in direct or indirect contempt may be placed in a secure detention facility not to exceed 5 days for a first offense and not to exceed 15 days for a second or subsequent offense.

§ 985.037, Fla. Stat. (2019).

In J.M. v. Gargett, 101 So. 3d 352, 354 (Fla. 2012), the Florida Supreme Court considered whether section 985.037, Florida Statutes "authorizes a trial court to sentence a juvenile to consecutive periods in a secure detention facility where the juvenile has committed multiple violations of a single probation order."  The court examined a case in which a juvenile challenged the denial of his petition for writ of habeas corpus following the imposition of consecutive sentences in secure detention for indirect criminal contempt premised upon the failure of the juvenile to adhere to his curfew for three successive days.  After closely examining the language set forth in the statute, the court concluded, "[U]nder section 985.037, a juvenile who violates a court order on multiple occasions—and in doing so commits several acts of indirect contempt—may be sentenced to up to five days' secure detention for the first offense,

7

and up to fifteen days' secure detention for each second or subsequent offense." Id. at 356. The court further noted:

> To hold otherwise would prohibit a trial judge from punishing individuals, such as the appellant, who repeatedly and intentionally disparage the integrity of the court and interfere with the course and conduct of proceedings before it. A trial court would be powerless to impose more than twenty days of secure detention, no matter how many acts of contempt were committed or how egregious they were.

Id. at 356-57 (quoting K.Q.S. v. State, 975 So. 2d 536, 538 (Fla. 1st DCA 2008)).

Similarly, in J.M.H. v. State, 112 So. 3d 692 (Fla. 2d DCA 2013), the Second District Court of Appeal upheld a contempt order imposing consecutive sentences for multiple violations of a single probation order. Citing the holding in J.M., the court stated, "[t]he statutory scheme itself contemplates this exact situation and calls for trial courts to limit contempt sentences to five days for the first instance and fifteen days for each successive instance." Id. at 693.

In the instant case, J.A. previously violated the trial court's command to remain in her home, culminating in a contempt finding and placement in secure detention. Following that violation, in an effort to ensure J.A. would follow its edict, the trial court explicitly forewarned J.A. that any future violation would result in a separate contempt charge for "each day [she remained on the] run." As the Do Not Run Order effectively required J.A. to remain home each day, we conclude that each day that J.A. refused to adhere to the court's requirement constituted a separate violation of court order. To hold otherwise would vitiate the express language of the

statute, undermine the trial court's order, which clearly advised J.A. that each day away from home would constitute a separate incident of contempt, and render the court powerless to reasonably distinguish between absconding and fleeting absence in meting out an appropriate punishment.[3]

Having concluded that the trial court complied with all applicable procedural requirements and that the imposition of consecutive sentences was legal under the circumstances demonstrated, the petition for writ of habeas corpus is denied.

Petition Denied.

---

[3] Indeed, if we were to adopt the construction urged by J.A., there would be no incentive for a juvenile to return home at all, knowing, for example, that the trial court could punish a ten-day absconder no more harshly than an overnight violator.