339 So.2d 1133 (1976)
Freddie MARTINEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 76-397.
District Court of Appeal of Florida, Second District.
December 1, 1976.
Jack O. Johnson, Public Defender, Robert H. Grizzard, II, Asst. Public Defender, and John Robert Howes, Legal Intern, Bartow, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
GRIMES, Judge.
This is an appeal from a conviction of direct criminal contempt as a result of which the appellant was sentenced to six months.
*1134 The appellant was charged by information with entering a dwelling with intent to commit petit larceny. He changed his previously entered plea of not guilty to guilty. The judge accepted the plea and ordered a presentence investigation. The following colloquy then took place:
"THE DEFENDANT: What is pre-sentence investigation?
THE COURT: The Parole Board people in this State check on your background, your record, your family ties, your educational history, find out whether or not you have got a drug problem, what your juvenile record is.
THE DEFENDANT: I don't got no juvenile record. Why can't I just get my time today?
THE COURT: Pardon?
THE DEFENDANT: Why can't I just get my time today?
THE COURT: Because it is the Court's decision, Mr. Martinez, to get the pre-sentence investigation, and when you are ultimately sentenced, you will be given credit for all of the time spent.
THE DEFENDANT: Isn't that one of my rights, to waive a P.S.I.?
THE COURT: Hmmn?
THE DEFENDANT: Isn't that one of my rights, to waive the P.S.I.?
THE COURT: The P.S.I. is for the benefit of the Court. It would be totally unjust for me to pass sentence on you without finding out as much about you as I could.
THE DEFENDANT: You ain't going to find nothing out about me but what I told you.
THE COURT: You will be surprised what they find out about people. It will be about six weeks.
THE DEFENDANT: That's a bunch of bull shit.
THE BAILIFF: Watch your mouth, Martinez. You are in a Courtroom with a Judge.
THE COURT: Mr. Martinez, I have been rather calm with you in putting up with what I regard as a totally surly attitude. I cannot, however, put up with what I consider to be a direct affront to this Court.
THE DEFENDANT: It ain't no affront."
The judge then ordered the appellant to be brought back before the court to answer the charge of direct criminal contempt. At the hearing nine days later, the appellant apologized, but the judge found him in direct and willful contempt of court and sentenced him to six months in the county jail consecutive to any sentence to be received in the case in chief.
Appellant first argues that the words he used which formed the basis for his contempt conviction were constitutionally protected under the First and Fourteenth Amendments to the United States Constitution, and Sections 4 and 9 of Article I of the Constitution of the State of Florida. Thus, he contends that these words were not "fighting words" as discussed in Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), but were simply used as a "tool of communication" as explained in White v. State, 330 So.2d 3 (Fla. 1976). However, the cases in which these principles were announced did not involve charges of contempt.
Our Supreme Court in Ex Parte Earman, 85 Fla. 297, 95 So. 755 (1923), defined a direct contempt as:
"... an insult committed in the presence of the court or of a judge when acting as such, or a resistance of or an interference with the lawful authority of the court or judge in his presence, or improper conduct so near to the court or judge acting judicially as to interrupt or hinder judicial proceedings... ."
The court went on the define a criminal contempt as:
"... conduct that is directed against the authority and dignity of a court or of a judge acting judicially, as in unlawfully assailing or discrediting the authority or dignity of the court or judge or in doing a duly forbidden act."
We hold that the appellant's conduct was such as could fall within the scope of the *1135 foregoing definitions. Therefore, he was properly subject to being held in contempt.
We do not hold that every profane utterance made in the courtroom is automatically contemptuous. By the same token, we do not hold that profanity is an essential ingredient to a conviction for contemptuous statements. The challenged statements must be viewed in the context in which they were made. If it appears that they are insulting to the judge or degrade the dignity of the court, they may be deemed contemptuous. A reduction in the authority of our courts or in the respect to which they are due is bound ultimately to have an adverse effect upon the quality of justice.
Appellant further argues that because he was tried before the court he was unlawfully deprived of a jury trial. Fla.R. Crim.P. 3.830 dealing with direct criminal contempt contemplates a trial only before the court. However, in a series of decisions, the United States Supreme Court has held that sentences in excess of six months may not be imposed for criminal contempt without guilt or innocence being determined by a jury. Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); Codispoti v. Pennsylvania, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974). Under the authority of these decisions, appellant's six month sentence could be properly imposed upon conviction without a trial by jury.
However, the question is not quite so simple. In Aaron v. State, 284 So.2d 673 (Fla. 1973), which was a case involving indirect criminal contempt, the Florida Supreme Court stated:
"... If the judge contemplates the imposition of a sentence of six months' imprisonment, or greater, he must empanel a jury to try the facts, unless the defendant has made a waiver thereof... ." (Emphasis supplied.)
The Third District Court of Appeal has followed Aaron and reversed a contempt conviction sentence of six months for failure to hold a jury trial. Miami Health Studios, Inc. v. State ex rel. Gerstein, 294 So.2d 365 (Fla.3d DCA 1974). Our court, in passing, has also cited Aaron for the proposition that a judge may not impose a sentence of six months or greater upon a judgment of contempt unless the accused has been afforded a jury trial. Barr v. State, 334 So.2d 636 (Fla.2d DCA 1976).
On the other hand, we have also specifically rejected the contention that a defendant was entitled to a jury trial in contempt proceedings in which he received a six month sentence. Butler v. State, 330 So.2d 244 (Fla.2d DCA 1976). Likewise, there are statements in at least three other cases which seem to sanction a sentence of up to six months for contempt without a jury trial. Jacobs v. State, 327 So.2d 896 (Fla.3d DCA 1976); Speller v. State, 305 So.2d 231 (Fla.2d DCA 1974); Salem v. State, 305 So.2d 23 (Fla.3d DCA 1974).
Can it be said that the Florida Supreme Court was intentionally reducing the permissible sentence for conviction of criminal contempt without a jury by one day? We think not. The Aaron opinion relied extensively upon some of the very same U.S. Supreme Court decisions on the subject. The comment of the court that a jury trial is required for a six month sentence was incidental to its decision, and, therefore, constituted obiter dictum. We believe our Supreme Court's reference to a sentence of "six months' imprisonment, or greater" was inadvertent and that the court intended to follow the guidelines established on this subject by the U.S. Supreme Court.
Accordingly, we hereby recede from the statement referred to above in Barr v. State, supra, and the judgment and sentence for contempt is
AFFIRMED.
McNULTY, C.J., and SCHEB, J., concur.