SHEPHERD, C.J.
Although counsel for neither party distinguished himself by his conduct in this otherwise quite ordinary probation violation hearing, the law by which we are bound affords us the right and obligation to focus on the two offenses for which Alexander J. Michaels was found in direct criminal contempt by the trial court and sentenced to two days in the county jail. One offense was a hand gesture directed toward opposing counsel. The other was the mumbling, in Romanian, of profanities at opposing counsel. We grant Mr. Michael’s petition for a writ of habeas corpus from the conviction for use of the hand gesture, but deny his petition for habeas relief for the mumbling of profanities during the course of the proceeding. Finally, we vacate the sentence in this case and remand for resentencing based upon the single conviction.
ORDER ON REVIEW
The contempt order in this case reads in its entirety as follows:
THIS CAUSE for DIRECT CRIMINAL CONTEMPT OF COURT was heard on May 17th, 2013. Upon due deliberations, advice of counsel, and evaluation of the evidence presented, this Court FINDS:
That Alexander Michaels was in violation of a direct court order to conduct himself in a respectful and professional manner, that he violated that order by using foul language, To Wit: “F[* *]k You” and or the equivalent term in Romanian, as well as using violent and offensive physical gestures in an effort to obstruct the proceedings and administration of Justice before this court and did in fact disrupt this Court. All conduct occurred in the presence of this court.
ORDERED AND ADJUDGED that Alexander Michaels is to stand conviction of Contempt of Court and is sentence[d] to two days in the Dade County Jail.
The subsequently entered judgment holds Mr. Michaels in direct criminal contempt for “FOUL LANGUAGE AND DISRESPECT TO THE COURT; inappropriate violent gestures, all of which obstructed the proceedings and administration of Justice[,] [¿Including [m]um[ Jbling “F[* *]k You” [a]t the podium.
BACKGROUND
On May 13, 16, and 17,'2013, Mr. Mi-chaels appeared before the Honorable Christina Miranda, representing a client in a probation violation hearing. From the beginning, Mr. Michaels presented in an agitated state. Almost immediately, Mr. Michaels engaged in an inappropriate, if not unprofessional, verbal exchange with a female prosecutor not assigned to the case that compelled the trial court to caution him to “slow down.” Tr. 40, May 13, 2013. At the same time, the trial court reminded all present in the courtroom to “respect each other, if I have to deal with childlike conduct, then I will deal with it accordingly.” Tr. 41. Shortly after these warnings, Assistant State Attorney Michael Von Zamft began the presentation of the State’s case. The hearing remained contentious. Mr. Michaels continued to be disrespectful. The admonishments continued as well.
On the third day of testimony, after an objection by Assistant State Attorney Von Zamft to testimony being elicited by Mr. *326 Michaels on re-direct examination of his own witness on the ground the question was beyond the scope of cross examination, Mr. Michaels apparently made the hand gesture in question.[1] The following exchange ensued between the court and counsel:
MR. VONZAMFT: Your Honor, [if] he threatens me one more time, I’m going to deal with him in a different way.
I’m going to ask the Court to hold this man in contempt and potentially [B]aker [A]ct him. I have case law to substantiate your right to substantiate the contempt. [sic]
THE COURT: I have the case law. I just want to address t[w]o things before I address the issue.
MR. MICHAELS: You are talking to me. I asked him not to interrupt. He continuéis] to interrupt. I raised my voice at him to be quiet.
THE COURT: That’s not the conduct I’m referring to. The raising of the voice I tolerated. It was the hand gesture and what was mouthed. .
MR. MICHAELS: Nothing was mouth[ed].
THE COURT: Unfortunately for you I saw it and I understood it. It’s very unprofessional. At the point we address it[,] I’ll address all of it on the record.
Tr. 51, May 17, 2013 (emphasis added).
Mr. Michaels countered:
You [the court] didn’t hear anything you could not possibly say [sic]. Whatever word I said you have no idea what I said. Now, I did this with the hand like this side down. I didn’t say anything to him.
You have no idea what I said in native language. You may assume it is bad word. You may assume it’s — I use many language [sic]. No one hears it. I do it all the time when I get upset.
[When] I know I’m going to say something not proper in court I switch to my native language. No one understands. There is no possible, any kind of contemptuous things saying the word.
Tr. 55, May 17, 2013 (emphasis added). The court then announced she was going to proceed with direct criminal contempt proceedings, making it clear on the record the proceeding would be limited to “making rude and violent gestures toward the prosecutor and mouthing the words ‘f[* *]k you’ to the prosecutor in my presence,” both of which occurrences the trial court stated she personally witnessed. Tr. 60. At Mr. Michaels’ request, the trial court recessed for lunch to afford Mr. Michaels the opportunity to retain counsel and secure witnesses. Tr. 63.
THE CONTEMPT PROCEEDING
The court convened the contempt proceeding immediately after lunch. Kenneth Speiller, Esquire, appeared on behalf of Mr. Michaels. Because Mr. Speiller had not been privy to the earlier proceedings, the trial court addressed Mr. Michaels and recapped the proceedings:
I previously indicated to you prior to his being here that on a number of occasions throughout this three day probation violation hearing, I have instructed you not only to cur[b] your conduct, but to be respectful of the Court, the witnesses, the other attorneys involved, your client, and the audience.
Almost each time I reference all of those individuals, in my instruction and direct order for professional behavior. I *327 have made a list throughout the three days of things as they progressed.
I indicated to you I would not tolerate anymore and my last admonishment was yesterday evening when I told you that would be the last time.
About the first ten minutes of today’s hearing there was an outlandish comment and I said, Mr. Michaels, it’s too early for this.
In addition to that the last instruction ordering you to be professional, respectful of the Court, and all who are present was violated by your conduct as I described earlier and will describe again for the record.
There was an objection made which eventually was actually sustained by counsel who stood up from the table while you were at the podium, but the State was at their table.
It was not an outlandish or extra loud or disruptive objection. Before I could finish ruling or even addressing it there was a vulgar and violent action from you while at the podium in my direct line of sight and you mouth “f[!l! *]k you.”
That’s in direct violation to my order and I’ve asked you if you have any reason why I should not hold you in direct criminal contempt.
Tr. 65-66 (emphasis added). Mr. Mi-chaels, through counsel, then addressed each asserted direct contempt charge.
The Hand Gesture
On this charge, Mr. Michaels’ counsel called seven witnesses, all of whom categorically testified Mr. Michaels did not make any inappropriate hand gesture toward Mr. VonZamft. Tr. 68, 71, 75, 79, 83, 86-87, 90. Rather, each witness testified that Mr. Michaels extended his arm, palm extended upward and out or in a “stop” mode, seeking to “shush” Mr. Von Zamft for interrupting Mr. Michaels’ redirect examination. The law requires a charge of direct criminal contempt be proven beyond a reasonable doubt. McRoy v. State, 31 So.3d 273, 274 (Fla. 5th DCA 2010). We review such orders on an abuse of discretion standard. Rudolph v. State, 832 So.2d 826, 828 (Fla. 3d DCA 2002); Michaels v. State, 773 So.2d 1230, 1232 (Fla. 3d DCA 2000); Thomas v. State, 752 So.2d 679, 685 (Fla. 1st DCA 2000) (“We undertake review of the order of direct criminal contempt mindful that the controlling standard of review is the abuse of discretion standard.”) (citations omitted)). Although the trial court thought to the contrary, the evidence presented on this charge is insufficient to support such a finding. Smith v. State, 954 So.2d 1191, 1195 (Fla. 3d DCA 2007). We grant the petition and quash the contempt order insofar as it finds Mr. Michaels in direct criminal contempt for making an offensive gesture.
The Romanian Mumble
Mr. Michaels’ use of foul language, however, is another matter. On this charge, Mr. Michaels admitted that while extending his hand toward Mr. Von Zamft, he mumbled the words “futos gutos monte” at him. Tr. 97. The trial court immediately knew or gleaned from Mr. Michaels’ scornfulness that the words meant “F* *k You.” Mr. Michaels confirmed the trial judge’s interpretation of the words during colloquy at the contempt hearing held a few hours later:'
THE COURT: You stated that you mumbled Romanian, what do those words mean?
[Mr. Michaels]: I’m not going to say at this point. They are obscene words. They are obscene words in Romanian. Again, if that is somehow contemptuous, then I apologize to everybody [who] *328 could be insulted by words they do not understand.
I’m going to try in the future to stop even doing that, but I do speak Romanian. I [have] been in trouble before. I learned it in order not to offend anybody.
It happened before. Sometimes they realize they don’t understand the words. They smile, they laugh, they say don’t do it again.
Tr. 99-100. We are well aware this has happened before and we are not laughing. Mr. Michaels also has proven “don’t do it again” means nothing to him.[2] Neither do prior sanction opinions from this court, nor prior discipline from the Florida Bar. See Michaels v. State, 773 So.2d 1230 (Fla. 3d DCA 2000) (affirming a judgment of direct criminal contempt and a sentence of six months of probation for violating an order to refrain from making speaking objections); Quinones v. State, 766 So.2d 1165, 1167 (Fla. 3d DCA 2000) (reporting Mr. Michaels to the Florida Bar for “unprecedented levels of attorney misconduct”).[3]
Mr. Michaels somehow is under the impression that cursing in his native tongue is somehow less contemptuous than cursing in English. However, we defer to the trial court’s finding, “I know what I saw.” Pursuant to Florida Rule of Criminal Procedure 3.830, the trial court’s reliance on her sight — coupled with record support from Mr. Michaels’ own mouth — is sufficient to uphold the finding of contempt based on “the mumble.” Viewing, as the trial court here did, the words mumbled in the context in which they were made, see Martinez v. State, 339 So.2d 1133, 1135 (Fla. 2d DCA 1976), we conclude the trial court correctly deemed them contemptuous.
Finally, there can be no question the conduct at issue here hindered the trial court in the administration of justice. See Ex parte Earman, 85 Fla. 297, 314, 95 So. 755, 760 (1923) (“A direct contempt is an insult committed in the presence of the court or of a judge when acting as such, or a resistance of or an interference with the lawful authority of the court or judge in his presence, or improper conduct so near to the court or judge acting judicially as to interrupt or hinder judicial proceedings.”); see also Woodie v. Campbell, 960 So.2d 877, 879 (Fla. 1st DCA 2007) (stating conduct which hinders the trial court in the administration of justice or which is calculated to lessen the court’s authority or dignity constitutes criminal contempt); accord Saunders v. State, 319 So.2d 118, 124-25 (Fla. 1st DCA 1975).
On the other hand, because we are granting relief on the hand gesture charge, we also reverse and remand this case for resentencing on the remaining charge. At the same time, although it seems a useless exercise, we refer Mr. Michaels once again to the Florida Bar for disciplinary proceedings.
Petition granted in part, denied in part, and remanded for further proceedings in compliance herewith.
WELLS, J., concurs.

. There is no simultaneously created description of the gesture in the record.

. Early in the proceeding, Mr. Michaels blurted out to the trial court, “I don’t know what common sense is. I lost that a long time ago.” Tr. 203, May 13, 2013. Having reviewed the record, we cannot quarrel with Mr. Michaels’ self-assessment.

. Counsel for the State of Florida has provided us with evidence of three occasions on which Mr. Michaels was disciplined by the Florida Bar since the issuance of our sanction opinions.