902 So.2d 259 (2005)
Perach MARCUS, Appellant,
v.
Jeffrey MARCUS, Appellee.
No. 4D04-2603.
District Court of Appeal of Florida, Fourth District.
May 18, 2005.
*260 Neil Jagolinzer and Jeffrey M. Clyman of Christiansen & Jacknin, West Palm Beach, for appellant.
Jane Kreusler-Walsh and Barbara J. Compiani of Jane Kreusler-Walsh, P.A., and Mark T. Luttier of Burman, Critton, Luttier & Coleman, West Palm Beach, for appellee.
WARNER, J.
The wife appeals an order holding her in contempt for not taking "adequate steps to insure that, when it is the husband's time with the children, the father gets to exercise his visitation" and to make sure that the father got his time with the children, or at least with one of his sons, David. Because the order setting visitation was not sufficiently explicit for the wife to determine what her obligation was, we conclude that the court erred in holding the wife in contempt under these circumstances.
The husband filed a petition for dissolution on December 31, 2003. The parties are the parents of four children: Rachel, age 13; David, age 12; Daniel, age 11; and Rebecca, age 5. Even after the filing of the petition, they occupied the marital home together with the children until they agreed on an order of temporary relief. In the order signed by the judge on April 13, 2004, the husband agreed to vacate the marital home on May 1, 2004. The order provided that the parties would either agree to visitation or, if they could not agree, they would be governed by the standard Model Parental Time Sharing Schedule of Palm Beach County, with the wife being considered the primary parent. *261 The order carved out two exceptions, including the husband's entitlement to have the children overnight on Wednesdays in those weeks when he does not have week-end visitation.
The husband actually vacated the house by April 30 and moved just down the street. He therefore elected to pick up the children from their school for weekend visitation. Three of the children came without any problem, but one son, David, tried to escape. When the husband found him at school, he escorted his son to the car. During the ride to the husband's home, David began a ten minute tirade against his father. At the home, David started a path of destruction. When David's religious tutor came to the home, he took David back to the wife's home. The husband called the wife and told her that he expected David to spend the evening with him and that he expected the wife to try to make that happen. According to the husband, the wife said, "I'm never going to force the children to do anything they don't want to do."
Subsequently, the tutor brought David back to the husband's home. At that point, the husband told David that he loved him and wanted him to stay the night but that he could not physically stop him from leaving. David left on his own and returned to the wife's home.
The next day, David went to the synagogue where he met his brother Daniel, who had spent the night with the husband. The husband spent most of the morning at the synagogue. The boys played basketball and then went to the wife's home. After the Sabbath, the husband confronted the wife and told her he expected the boys to come with him. He asked the boys to come with him, but they were watching television and told him to come back after the show was over. David did not spend the night with his father on Saturday or Sunday.
On Wednesday, the husband was also to have visitation with the children. Again, he went to the school to pick them up but David refused to go with him, so the wife picked David up from school and took him out for food before dropping him off at the husband's home. David then talked Daniel into leaving, and they returned to the wife's residence on their own. She allowed the boys to stay at her home, rather than returning them to their father. Shortly thereafter, the husband filed a motion for contempt alleging that the wife was orchestrating David's bad behavior, and she was refusing to have the children comply with the visitation schedule.
At the hearing on the motion, the husband testified to the foregoing events. A neighbor testified that on the Saturday morning she asked the wife and David to come to her house, which is next to the synagogue. Later, the neighbor saw the husband and two of the children at the synagogue. The husband asked the neighbor to watch the youngest child while he attended synagogue. At that time, David and Daniel were playing basketball on the temple's courts, all within viewing distance of the neighbor's house. The youngest child joined her brothers on the court, and then they all started running away from the synagogue. The neighbor stated that the wife ran after the children, catching the youngest child and returning her to the neighbor while she hunted for the boys. After the Sabbath was over that evening, the neighbor called the wife who told her that the boys were at her house. The neighbor testified that the wife was doing everything in her power to get the boys to go to the husband's house. What the wife did not do was physically force the children to return to their father.
*262 The testimony reveals substantial conflict among the children regarding their parents' impending divorce. David is particularly upset and wants to be with his mother, while Rachel wants to be with her father.
The court held the wife in contempt of the order for temporary relief, finding that "the mother is providing, as is human nature, a safe comfortable place for the children to be. The wife is not taking adequate steps to insure that when it is the husband's time with the children, the father gets to exercise his visitation." The court's order suggested that it would also hold the husband in contempt upon proper motion if the husband was guilty of the same, but the court found that "the mother has not done everything she could to make sure that the father got his time with the children, or at least David." The order further counseled:
Both parents are reminded that when it is their time with the children it is their time with the children; that is not an option, it is an obligation. Even though the children express a desire to be with one parent over the other, that parent must insist that the child go see the other party. If necessary, the parties must close the door to their own home to the children and require them to visit the other party. Children can act up and misbehave and kick and scream as kids do when they don't get their way, which is a challenge even in homes with intact marriage.
Based upon these findings the court held the mother in contempt and ordered her as follows:
The wife shall exercise her prerogative as a parent and if necessary in any reasonable way fashionable shall impose her will on the children to express to them that it is not their time to stay with her, but rather it is their time to go with their father. The wife may use her own parenting techniques to make sure that happens, and if it does not, then it borders on contempt.
The court is not telling the wife to drag the children by the arm or hair out of the house as that would not be good parenting, but to do what she has to do as a parent to get the children to see their father.
The wife appeals this order.
We preface our determinations with the observation that all of the events occurred on the first weekend of visitation, the day the husband moved out of the house in a divorce where the children are obviously conflicted.
Although a custodial parent has an affirmative obligation to encourage the relationship with the non-custodial parent, Schutz v. Schutz, 581 So.2d 1290 (Fla. 1991), when that obligation is sought to be enforced by contempt, the order must be precise in its commands.
[W]hen a final judgment or order is not sufficiently explicit or precise to put the party on notice of what the party may or may not do, it cannot support a conclusion that the party willfully or wantonly violated that order. Even though a judgment of contempt is clothed with a presumption of correctness, Krueger v. State, 351 So.2d 47, 49 (Fla. 3d DCA 1977), "[o]ne may not be held in contempt of court for violation of an order or a provision of a judgment which is not clear and definite so as to make the party aware of its command and direction." Lawrence v. Lawrence, 384 So.2d 279 (Fla. 4th DCA 1980).
Keitel v. Keitel, 716 So.2d 842, 844 (Fla. 4th DCA 1998) (reversing an order finding the wife in contempt for relocating child out of state, when no prohibition of relocation was in the judgment, even though *263 relocation would interfere with husband's visitation).
The Order of Temporary Relief provided for the incorporation of the visitation schedule of the Palm Beach County Model Parental Time Sharing Schedule. The order itself admonished each party not to talk to the children or involve them in the impending divorce or to disparage the other directly or indirectly. The model schedule provides not only for standard visitation but also for "guidance to the parents as to what is expected of them regarding their obligations to the other parent." Included in the schedule is a section entitled "General and Specific Time Sharing Issues for the Parents of Children of Divorce." Within that section, it provides that parents should "provide as much direct contact and positive involvement as possible between each child and each parent." That is about as close as the schedule comes to requiring each parent to insist that the child visit with the other parent. It does not discuss what to do when the child adamantly refuses to abide by the visitation schedule.
We conclude that the temporary relief order was not specific enough to put the wife on notice of the conduct expected of her when one of the children simply refuses to stay with the husband and runs away when he is sent there. The wife's conduct could not be deemed willful. See Keitel. Nor did the court make a finding of willfulness. Even the husband's motion suggests the wife only "indirectly" violated the order. Although the husband made allegations in his motion that the wife must have made disparaging remarks and was somehow undermining his visitation privilege, there was no proof of any such remarks, and the court made no finding on this issue. The only evidence of the wife's unwillingness to comply with the visitation privilege was her statement that she would never force the children to do anything they did not want to do. This was said in the context of David's running away from his father and adamant refusal to return to his home. The husband wanted the wife to physically force the child to go with him, something he stated he himself would not do to the child. The other three children visited with their father, and the wife did not prevent the visitation. None of this showed that the wife specifically and willfully disobeyed the temporary relief order.
Conflict over visitation is unfortunately all too common, and we do not condone a laissez-faire attitude by one parent as to the other parent's ability to maintain his or her relationship with the children. But holding one party in contempt based upon aspirational directives as to what ideal visitation conditions should be is error because "the law also imposes upon the court the requirement to be explicit and precise in its commands if strict compliance is to be exacted in the form of a contempt sanction." Cooley v. Moody, 884 So.2d 143, 145 (Fla. 2d DCA 2004) (citation omitted).
Although the original order did not inform the custodial parent of the conduct expected of her in assuring that the husband is able to exercise his visitation, the order of contempt leaves no doubt as to what is expected of the parties in the future. While we reverse the order of contempt, we conclude that the parties have sufficient notice of what is expected regarding their future conduct in facilitating visitation.
Reversed.
FARMER, C.J., and GUNTHER, J., concur.