DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT
*July Term 2014*

**LORI A. FORD,**
Appellant,

v.

**MICHAEL WITHERS FORD,**
Appellee.

No. 4D13-1369

[November 26, 2014]

Appeal of a non-final order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; James L. Martz, Judge; L.T. Case No. 502010DR004027XXXXSB.

Stacey D. Mullins and Holly D. Schuttler of Schuttler & Greenberg, Boca Raton, for appellant.

Andrew A. Harris of Burlington & Rockenbach, P.A., West Palm Beach, and Holly Gayle Gershon of Holly Gayle Gershon, Attorney At Law, Boca Raton, for appellee.

WARNER, J.

In this marital post-dissolution case, the former wife appeals an order finding her in contempt and imposing sanctions for her failure to comply with the parties' parenting plan. The trial court ordered one of the parties' children to attend a wilderness program; held the former wife in contempt for violating the parenting plan; ordered the former wife to attend individual therapy; and ordered the former wife to pay for the cost of reunification therapy as well as a social investigation of the family. Because the child turned eighteen during the pendency of this appeal, the order has become moot as to the provisions directing him to attend a wilderness program. We affirm the court's finding of contempt and the requirement of payment of costs. We reverse, however, the provisions of the order requiring the former wife to attend therapy, because it was imprecise and vague as to its duration, relying on a change in attitude of the children rather than a change in the former wife's psychological condition.

The parties obtained a dissolution of their marriage in 2011. The final judgment provided for shared parental responsibility for their three minor children, including a parenting plan and timesharing schedule. Several months later, the former husband filed a motion for contempt alleging that the former wife was intentionally frustrating his ability to have a positive relationship with the children.

As grounds, he alleged that she discussed details of the divorce litigation with them; made derogatory statements about him; refused to take action to deter disrespect of the former husband by his children; and interfered multiple times with the former husband's visitation by failing to deliver the children to his house or allowing the children to "opt out" of visitation. He requested that the court find the former wife in contempt; order makeup timesharing; order the former wife to attend counselling to avoid continued alienation of the children; and order the former wife to pay for the children's therapy.

At the former husband's request, and before hearing the contempt motion, the court appointed a reunification therapist to treat the family and a psychologist to conduct a social investigation of the family. Other hearings and motions were filed by the parties, many directed at the middle son, who adamantly refused to visit with his father. The former husband filed a supplemental motion for contempt alleging that the former wife continued to actively and passively violate the parenting plan and shared parental responsibility provisions in the final judgment. By this time, the parties' eldest child had turned eighteen.

The court held a full hearing on the contempt motions, at which the court-appointed psychologist testified, as well as the parties. At the conclusion, the trial court entered an order making findings regarding specific dates on which the former wife interfered with the former husband's visitation, as well as specific instances where the former wife contributed to the hostile relationship between the children and the former husband. The court found that the former wife was angry at the former husband and had empowered the sons to reject their relationship with their father. It held her in contempt for violations of the final judgment.

The court ordered the middle son to attend a special wilderness program during the summer. It also ordered individual therapy for the former wife so that she could learn not to interfere with the relationship between the children and their father, as well as how to share parental responsibility for the children. To that end, the court ordered her to commence individual therapy with a therapist of her choosing, and to "continue her therapy until she is able to convince [the two minor children]

that it is her desire that they see their father and love their father and to create a loving, caring feeling toward their father in their minds."

The court ordered the former wife to pay the full cost of the court-appointed psychologist who had investigated the family. It also ordered her to pay half the cost of the court-appointed reunification therapist. The court declined to award the former husband monetary compensation for lost visitation under section 61.13(4)(c), Florida Statutes (2012), noting that the former husband had not requested it in his prior pleadings and that the former wife therefore was not on notice of this possibility. It also ordered the former wife to pay the former husband's attorney's fees. The former wife appeals this ruling.

In her brief, the former wife raises several issues regarding the provision requiring the middle son's attendance at the wilderness program. The son turned eighteen during the pendency of this appeal, and the parties agree that the family court has no further jurisdiction over the son at this time. We therefore deem these issues moot.

Next, the former wife complains that the court erred in holding her in contempt for violating the parenting plan, because it failed to identify specific provisions of the plan that she had violated and instead relied on the aspirational goal for her to foster a good relationship between the former husband and the children. A contempt order is reviewed for an abuse of discretion or fundamental error. *Wilcoxon v. Moller*, 132 So. 3d 281, 286 (Fla. 4th DCA 2014). Yet, where the trial court bases contempt upon noncompliance with something an order does not say, "the standard of review is legal error, not abuse of discretion." *Harris v. Hampton*, 70 So. 3d 747, 749 (Fla. 4th DCA 2011) (quoting *DeMello v. Buckman*, 914 So. 2d 1090, 1093 (Fla. 4th DCA 2005)).

We have examined the court's contempt order and conclude that it recites multiple instances where the former wife violated specific provisions of the parenting plan. She actively participated in her two sons' refusal to stay at the former husband's home for his visitation, and for a period of several months she did not bring the children to the former husband's home for visitation, as required by the parenting plan. In other specific instances, she scheduled social events for the children on the former husband's time-sharing evenings, again in violation of a specific provision of the parenting plan.

Although the court also found that the former wife violated the plan's aspirational goal to foster a good relationship with each parent, which itself may not have been precise enough to hold her in contempt, there was

competent substantial evidence of specific violations of the parenting plan to support the finding of contempt. The requirements in the parenting plan in this case were far more specific than those in the temporary order in *Marcus v. Marcus*, 902 So. 2d 259, 262 (Fla. 4th DCA 2005), on which the former wife relies. The plan included sufficiently precise commands such that the former wife can be held in contempt for violating them.

The former wife also maintains that the trial court erred by holding her in contempt because it did not find that she had the ability to comply with the parenting plan. She argues the children themselves refused to stay with their father for visitation. "[I]n order to find an individual in contempt, the trial court must find that the contemnor had the ability to comply with the previous court order." *Harris*, 70 So. 3d at 749 (quoting *Dep't of Children & Families v. R.H.*, 819 So. 2d 858, 862 (Fla. 5th DCA 2002)); *see also Wilcoxon*, 132 So. 3d at 287 ("[A] party cannot be held in contempt for non-compliance with a court order if the party did not have the ability to comply with the court order.").

The court, however, specifically found that she did have the ability to get the children to comply with visitation, because she did so upon occasion. And there was evidence in the record to support the finding that her failure to comply with visitation was willful. There was evidence that she encouraged the children not to spend time with their father, as provided to him in the parenting plan: the court-appointed social investigator opined that she had empowered the children to reject their relationship with their father. Moreover, even if the former wife could not be held in contempt for every time her middle son refused to stay with his father, she clearly had the ability to schedule social events on days other than those on which the former husband had visitation with the children. Thus, we conclude that there was competent substantial evidence to show that the former wife did have the ability to comply with the parenting order but affirmatively refused to do so.

As part of the remedy for her violations of the parenting plan, the court ordered the former wife to obtain psychological counseling and continue with it "until she is able to convince [the two minor children] that it is her desire that they see their father and love their father and to create a loving, caring feeling toward their father in their minds." The former husband suggests that this issue is moot, as a successor judge later vacated that portion of the order. The vacation of that order was entered while this appeal was pending. Although this court relinquished jurisdiction for the trial court to rule on various issues, it does not appear that any written order was entered. Therefore, we address the issue.

4

The foregoing provision requiring therapy until the former wife can convince her children that she desires them to have a loving relationship with their father is not a purge provision. The former wife has not been threatened with incarceration if she does not go through with therapy. The trial court could impose a sanction under section 61.13(4)(c)7., Florida Statutes (2012), which permits the trial court to "impose any other reasonable sanction as a result of noncompliance" with the time-sharing portion of the parenting plan. We are hard-pressed, however, to classify therapy as a "sanction." Instead, the court was hoping to remedy the dysfunctional relationships between the father and his children, which the court found were due largely to the former wife's animosity towards the former husband. The statute does give the court the authority to "make specific orders regarding the parenting plan and time-sharing schedule as such orders relate to the circumstances of the parties and the nature of the case and are equitable . . . . " § 61.13(5), Fla. Stat. (2012). This provision, however, has never been interpreted to give authority to order the parents into therapy.

Nevertheless, the former wife does not challenge the authority of the trial court to order counseling. She claims instead that the counseling provision conditions the duration of therapy on "vague, ambiguous and potentially insurmountable goals." We agree that the provision is vague and is much too broad to be enforced. *See Lanza v. Lanza,* 804 So. 2d 408, 409-10 (Fla. 4th DCA 2001). Therefore, we reverse the order to the extent that it requires the former wife to submit to therapy under the conditions set forth in the order.

Additionally, the former wife contests the award to the former husband of the costs of the experts, as well as his attorney's fees. She argues the former husband has a clearly superior ability to pay all of the litigation costs and fees. We conclude that the court had the authority to award the expert and attorney's fees in accordance with the statute.

Section 61.13(4)(c), Florida Statutes (2012), authorizes the trial court to award costs and attorney's fees incurred where a parent has not provided time-sharing to the other parent, as well as order any other reasonable sanction as a result of noncompliance:

> (c) When a parent refuses to honor the time-sharing schedule in the parenting plan without proper cause, the court:

> . . . .

5

2. May order the parent who did not provide time-sharing or did not properly exercise time-sharing under the time-sharing schedule to pay reasonable court costs and attorney's fees incurred by the nonoffending parent to enforce the time-sharing schedule.

. . . .

7. May impose any other reasonable sanction as a result of noncompliance.

Together these provisions authorize the trial court to order the former wife to pay both the attorney's fees and expert's fees incurred in enforcing the parenting plan.

*Robinson-Wilson v. Wilson*, 932 So. 2d 330 (Fla. 4th DCA 2006), explains why the "need and ability to pay" test of section 61.16(1) does not apply here:

> This statutory power [under section 61.13(4)] to award attorney's fees is outside of section 61.16(1), Florida Statutes (2004), which requires a consideration of "the financial resources of both parties" as part of the decision to award fees and costs. The power to award fees is triggered by the wrongful conduct of the custodial parent, without consideration of the noncustodial parent's financial resources.

*Id.* at 331. As the trial court in this case was also enforcing the parenting plan provisions under section 61.13(4), the analysis of *Robinson-Wilson* applies. The court did not err in its award of attorney's fees.

Finally, the former wife claims that the court's order violates *Perlow v. Berg-Perlow*, 875 So. 2d 383 (Fla. 2004). She maintains that the court simply adopted the former husband's proposed order. We find this contention to be meritless. Although the court did use substantial portions of the proposed order, it clearly reflects the court's considered judgment, as the court did not include a rather substantial fine for lost visitation, which was part of the former husband's proposed order but was removed by the court.

In accordance with the foregoing, we reverse that portion of the order requiring the former wife to obtain counseling. We affirm all other portions of the order except those which we conclude are moot.

6

*Affirmed in part; reversed in part.*

CONNER, J., concurs specially with opinion.
KLINGENSMITH, J., concurs specially with opinion.

CONNER, J., concurring specially.

I concur in the result, but disagree that the trial court did not have authority to order counseling for the former wife under the facts of this case. While I agree that it would be best for the legislature to more clearly identify the authority of the court to order counseling for a parent when it appears that, without therapy or counseling, it is unlikely the parent will be able to successfully co-parent because of animosity toward the other parent or other emotional problems, I contend there is existing statutory authority for such action by the trial court. Admittedly, the authority is *implicit,* rather than *explicit. Cf. Gulf Coast Electric Coop., Inc. v. Johnson,* 727 So. 2d 259, 263 (Fla. 1999) (recognizing the Public Service Commission, as a matter of law, had the implicit authority to establish boundaries of service for utilities derived from two separate statutory sections); *Witmer v. Dep't of Bus. & Prof'l Regulation,* 662 So. 2d 1299, 1301 (Fla. 4th DCA 1995) (recognizing DBPR had "implied authority" to make rules to the extent necessary to implement unrepealed statutes).

I point to three different statutory provisions for such authority: sections 61.001, and 61.13(2) and (3), Florida Statutes (2012).

In section 61.001, the legislature clearly stated:
    (1) This chapter shall be liberally construed and applied.

    (2) Its purposes are:

        (a) To preserve the integrity of marriage and *to safeguard meaningful family relationships*;

        . . . .

        (b) *To mitigate the potential harm to* the spouses and their *children caused by the process of legal dissolution of marriage.*

(emphasis added). Additionally, in section 61.13(2)(a), the legislature clearly gave the court the power to "approve, grant, or modify a parenting plan." § 61.13(2)(a), Fla. Stat. (2012). Although section 61.13(2)(b) lists the items which "at a minimum" must be addressed, it does not appear

the legislature intended that list to be exhaustive, which means, in approving the parenting plan, the court can consider additional requirements.

More importantly, in section 61.13(2)(c), the legislature said "*[t]he court shall determine all matters relating to parenting and time-sharing of each minor child of the parties **in accordance with the best interests of the child** . . . .*" § 61.13(2)(c), Fla. Stat. (2012) (emphasis added). The "best interest of the child" theme is repeated in section 61.13(3):

> (3) For purposes of establishing or modifying parental responsibility and creating, developing, approving, or modifying a parenting plan . . . which governs each parent's relationship with his or her minor child and the relationship between each parent with regard to his or her minor child, *the best interest of the child shall be the primary consideration. . . Determination of the best interests of the child shall be made by evaluating all of the factors affecting the welfare and interests of the particular minor child* and the circumstances of that family, including, but not limited to:
>
> (a) *The demonstrated capacity and disposition of each parent to facilitate and encourage a close and continuing parent-child relationship*, to honor the time-sharing schedule, and to be reasonable when changes are required.
>
> . . . .
>
> (c) *The demonstrated capacity and disposition of each parent to determine, consider, and act upon the needs of the child as opposed to the needs and desires of the parent.*
>
> . . . .
>
> (f) *The mental* and physical *health of the parents.*
>
> . . . .
>
> (r) *The capacity and disposition of each parent to protect the child from the ongoing litigation as demonstrated by* not discussing the litigation with the child, not sharing

8

documents or electronic media related to the litigation with the child, and *refraining from disparaging comments about the other parent to the child.*

. . . .

(t) Any other factor that is relevant to the determination of a specific parenting plan, including the time-sharing schedule.

§ 61.13(3), Fla. Stat. (2012) (emphasis added).

In addition to sections 61.001, and 61.13(2), (3), I also submit section 61.122, Florida Statutes (2012), lends support to the notion that the legislature intended for courts to have authority to order parents to attend therapy or counseling when necessary to protect the best interest of children. Section 61.122 governs the liability of psychologists who develop a parenting plan recommendation in dissolution of marriage proceeding. It appears implicit that the legislature envisioned psychologists making recommendations to the court to assist the court in developing parenting plans. It seems equally implicit that psychologists may recommend the need for therapy or counseling to make the parenting plan successful.

Although one would not initially think that participating in mental health therapy or counseling is part of parenting, clearly there are limited instances in which one cannot effectively parent without therapy or counseling. Parenting inherently invokes and requires the ability to put a child's needs ahead of the parent, including the child's need to have some emotional bond with both halves of the two biological sources of the child's being. Thus, there can be very limited instances in which counseling or therapy *is* a necessary component of parenting.

In all but rare instances, it is not necessary, though perhaps tempting, to order one or both parents to attend counseling when the emotions of animosity flair up during a dissolution proceeding. Thus, it would be rare for a judge to order parents to attend therapy or counseling in *constructing* an initial parenting plan. However, when a plan has been approved by the court, and *it becomes clear to the court from the evidence that no plan is going to work without one or both parents attending therapy or counseling*, I contend the current language in Chapter 61 gives the judge the implicit authority to order therapy or counseling, where it is clearly in the best interest of child in order "to mitigate the potential harm to . . . the[] children

caused by the process of legal dissolution of marriage," and "to safeguard meaningful family relationships." § 61.001(2), Fla. Stat. (2012).[1]

Finally, to the extent there is life left in the principle that courts of equity have inherent authority to protect children, I would invoke that principle in this case, based on the particular facts, and affirm the trial court's authority to order the former wife to attend therapy. "The public policy of this state to protect the interests of children during dissolution proceedings is so firmly established in our jurisprudence as to require no citation of authority." *Franklin & Criscuolo/Lienor v. Etter*, 924 So. 2d 947, 949 (Fla. 3d DCA 2006). As early as 1933, our supreme court, in *Duke v. Duke*, 147 So. 588, 589 (Fla. 1933), recognized the longstanding principle that courts of equity have inherent power to protect infants and said:

> One of the most distinctive duties of the court of chancery in England was the protection of the interests of infants. It was said by Blackstone that chancery "is the supreme guardian, and has the superintendent jurisdiction of all the infants in the kingdom." See, also, Pomeroy's Eq. Juris. (4th Ed.) §§ 1304, 1307.

(quoting from the opinion of a commissioner in *Fisher v. Guidy*, 142 So. 818 (Fla. 1932)); *accord* § 61.011, Fla. Stat. (2012) (proceedings under Chapter 61 are in chancery); *Simms v. Dep't. of Health & Rehab. Servs.*, 641 So. 2d 957, 961 (Fla. 1984); *Pollack v. Pollack*, 31 So. 2d 253, 254 (Fla. 1947); *K.A.S. v. R.E.T.*, 914 So. 2d 1056, 1061 n.3 (Fla. 2d DCA 2005); *Cooper v. Cooper*, 194 So. 2d 278, 281 (Fla. 2d DCA 1967). The particular facts of this case demonstrate the very limited situation in which inherent authority of the court to protect children justifies the use of therapy or counseling as a parenting tool.

KLINGENSMITH, J., concurring specially.

I write separately to address that portion of the trial court's order requiring the former wife to obtain psychological counseling and ordering the child to attend wilderness camp. There is a misconception among some family court judges that a court overseeing a dissolution of marriage has powers similar to those of the court in a chapter 39 case, that being the power (or obligation) to emotionally "reunite" a child with a parent. Here, the court's order provided that the former wife obtain counseling

---

[1] The conclusion from the evidence that therapy or counseling is needed does not require expert testimony.

"until she is able to convince [the two minor children] that it is her desire that they see their father and love their father and to create a loving, caring feeling toward their father in their minds." As the majority opinion points out, this language improperly puts the length of therapy in the control of the children, subject to ending whenever the children become "convinced." More importantly, regardless of how desirable or beneficial the court may believe such counseling might be in any given case, a court in a chapter 61 case has no statutory authority to order therapy for any party with the goal of "rebuilding" a relationship between a parent and a child.

Unlike a judge in a chapter 39 proceeding, a judge presiding over a chapter 61 case has no statutory authority to order parties into therapy to correct their behavior. And, similar to the court's order here requiring the child to attend camp, a judge has no authority to order action by the child designed to remedy behavior that may be causing stress to the parent. For instance, there is no provision in chapter 61 authorizing the trial court to order an addicted parent into drug counseling, which a dependency judge can do under section 39.507(10), Florida Statutes, just as there is no provision in chapter 61 to order a parent into any other sort of therapy or counseling to address other behaviors. As the majority opinion correctly points out, section 61.13(5), Florida Statutes, has never been interpreted by any appellate court to provide the legal basis for ordering a parent or child into therapy, nor does any other provision of chapter 61 give such authority.

Chapter 61 also contains no language similar to sections 39.507(10) or 39.6011, Florida Statutes, authorizing the trial judge to fashion a reunification plan for parents and their children, or to order the parents into long-term, intensive therapy or counseling to effect a successful parenting or timesharing plan. Rather, section 61.13 directs the judge to take evidence of the facts concerning the separated parents and to fashion a parenting plan and timesharing schedule that is in the child's best interest. §§ 61.13(2)(c)2.a.; 61.13(3), Fla. Stat. (2012).

The Legislature intended that chapter 61 proceedings be quite different from chapter 39 cases. While reunification of the family is a goal of a chapter 39 dependency action, the family in a chapter 61 case is dividing due to irreconcilable differences. Reunification is not a goal. Although it is the public policy of the state, as provided in section 61.13(2)(c)1., "that each minor child has frequent and continuing contact with both parents after the parents separate," that public policy is qualified by the requirement under section 61.13(3) that the court must make the child's best interests the primary consideration only in fashioning a parenting plan and a timesharing schedule, not in creating rehabilitative schemes

designed to address issues for any particular family member. §§ 61.13(2)(c)1.; 61.13(3).

Remedying chronic relationship difficulties between a parent and child is not a function of a chapter 61 proceeding. While it may be tempting for a judge to enter orders designed to unravel the tangled skeins of a family's history and attempt to restore failed relationships, this is not the court's role. It is the court's obligation in a chapter 61 proceeding only to take the parties as they are, and to fashion an appropriate parenting plan and timesharing schedule from that information. It is beyond dispute that chapter 61 does not expressly provide the authority to issue orders requiring therapy. Deriving such authority through penumbras formed by emanations of chapter 61 would allow limitless expansion of judicial power in this area so long as a court deems it to be in the "best interests" of a child. It is not enough to say, as my colleague Judge Conner suggests, that this power exists but should only be used sparingly and in rare circumstances. To allow, let alone to require anything more would open a Pandora's Box, giving unfettered and unrestrained discretion to trial judges to fashion all sorts of "therapeutic" orders to fit a given case, limited only by the court's imagination.

In sum, under chapter 61, the court has no authority to fashion an order for a reunification plan and no authority to order either a parent or any child into therapy or counseling. Indeed, I believe there is a serious question about whether the court has any authority to order the children of a failed marriage to do anything whatsoever. These children are not parties to the dissolution proceeding, and it is dubious whether the court can compel their compliance via an enforceable order. The only real control the court has over these children is indirect, such as the ability to order conditions under which *their parents* shall interact with them. Unless and until the Legislature acts to provide such specific authority, courts cannot impose remedies such as orders for parental therapy out of whole cloth, however tempting it might be.

Therefore, despite having the best of intentions, I believe the court exceeded the scope of its statutory authority by ordering the former wife to obtain and pay for reunification therapy, and by ordering one of the children to attend a wilderness program.

*          *          *

**Not final until disposition of timely filed motion for rehearing.**