NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

SANDRINE MARIE AKRE-DESCHAMPS,      )
                                    )
        Appellant,                  )
                                    )
v.                                  )        Case No.  2D17-4837
                                    )
BRENDAN SMITH,                      )
                                    )
        Appellee.                   )
_____)

Opinion filed March 20, 2019.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Polk County;
Reinaldo Ojeda, Judge.

Thomas A. Burns and Arda Goker of Burns,
P.A., Tampa, for Appellant.

Adam G. Russo and Christopher H. Hunt of
Myers, Eichelberger & Russo, P.L.,
Orlando, for Appellee.


LaROSE, Chief Judge.

        Sandrine Marie Akre-Deschamps (the Mother) challenges the trial court's

order granting motions for child pickup, contempt, sanctions, and makeup time-sharing

in favor of Brendan Smith (the Father).  Because the trial court based one of its findings

of contempt on conduct that did not violate any prior order, we reverse in part and

remand with directions.  We affirm the order in all other respects.

## Background

The Mother is a French citizen who lives in France. The Father, who lives in Florida, is a U.S. citizen. Although they are not married, the Mother and Father have a preteen daughter who enjoys dual U.S. and French citizenship. In 2012, the parties obtained a foreign custody order from District of Montreal, Province of Quebec, Canada. At the time, the Mother lived in Canada on a student visa; the Father lived in Florida. In 2015, the Mother's visa expired and she returned to France. The child had been living with the Father since 2012. The Father subsequently filed a petition in Florida to domesticate and modify the Canadian custody order. After an evidentiary hearing, the trial court entered a final judgment granting the petition, domesticating the Canadian custody order, and modifying time-sharing provisions (hereinafter referred to as the "domestication order").

The domestication order provided full time-sharing to the Father during the school year, full time-sharing to the Mother during spring break and summer vacation, and rotating time-sharing for Thanksgiving and Christmas. Because the child would spend spring break in France, the domestication order provided for the child's return to Florida not less than twenty-four hours before the end of the break. The trial court admonished the Mother and Father not to make disparaging remarks about one another in front of the child.

The domestication order also specified terms for the "Transportation and Exchange of Minor Child." More specifically, the order provided that "[t]he parties shall have the [child] ready on time with sufficient clothing packed, and ready at the agreed upon time of exchange." Additionally, the child was to return "with the same items that accompanied the [child] when the [child] is released to the Party to exercise time-

sharing with the [child]." The order specified the locations in the airport where the parties shall exchange the child. The party responsible for missing a travel connection was responsible for any costs incurred by the missed connection.

In 2017, the then-nine-year-old child spent spring break with the Mother in France. At a previously arranged time at the end of spring break, the Mother arrived with her sister and the child at the airport in Paris, France, to return the child to the Father. The Father and his girlfriend were at the airport for the exchange. The child refused to leave with the Father. Unfortunately, the domestication order did not contemplate how the parties should respond to such a situation. The transfer of custody did not occur.

The Father thereafter filed an emergency motion for child pick up and a verified motion for contempt, sanctions, and makeup time-sharing. The trial court held an evidentiary hearing on the emergency motion in April 2017, and an evidentiary hearing on the motion for contempt in September 2017.

At the contempt hearing, the trial court found that the Mother physically prevented the Father from picking up the child when the child refused to leave. It also found that the Father's girlfriend tried to convince the child to calmly board the plane but the Mother rebuked the girlfriend, telling her to stop talking to the child and to leave the child alone. The trial court held the Mother in contempt for willfully failing to comply with the domestication order when she (1) "physically and intentionally prevented [the Father] from causing the Minor Child to board the airplane back to Florida from France," (2) "intentionally prevented [the Father's] girlfriend from speaking to, coaxing and convincing the Minor Child to willingly board the airplane," and (3) "made no attempt to

arrange pick-up of the Minor Child . . . subsequent to the failed Paris, France, airport transfer on or about March 26, 2017."  The Mother appeals this order.

## Analysis

The Mother argues that the trial court erroneously held her in contempt for conduct that was not in clear violation of the trial court's domestication order. Specifically, she argues that the trial court's "prior orders did not explicitly set forth the conduct that would be expected of the parties if the child were to refuse to board the plane to Florida with her father."  The Mother further argues that "[t]he transfer of custody was complete when [she] delivered her daughter to [the Father] at the airport," and that "[t]he trial court's prior orders simply did not contemplate anything that might occur <u>after</u> the moment in time when [she] brought the child to the airport and delivered custody to [the Father]."  (Emphasis added).

Initially, we note that the Mother provided us only a transcript excerpt from the contempt hearing.  This excerpt contains the trial court's summary of the evidence and oral ruling; it does not contain the evidence presented at the hearing.  Absent a full transcript, we presume the trial court's factual findings are correct.  <u>See</u> <u>Speer v. Mason</u>, 769 So. 2d 1102, 1103-04 (Fla. 4th DCA 2000).  Additionally, we may only reverse if an error of law appears on the face of the record.  <u>See</u> <u>Fugina v. Fugina</u>, 874 So. 2d 1268, 1269 (Fla. 5th DCA 2004) ("Because there is no transcript of the hearing in this contempt proceeding, our review is limited to errors of law that are apparent on the face of the record.").

An error may appear on the face of record where the trial court holds a person in contempt of an order based on noncompliance with something the order does not say.  <u>See, e.g.</u>, <u>Kadanec v. Kadanec</u>, 765 So. 2d 884, 886 (Fla. 2d DCA 2000)

(holding "[t]he characterization of the $20,945 as bridge-the-gap alimony [was] a legal error on the face of the order that warrant[ed] reversal," where the prior order awarded $20,945 as equitable distribution and expressly denied alimony, and the property division award could not be enforced by contempt).  After all, the law is clear that the trial court may not hold a person in contempt of an order unless the language of the order was "clear and precise," and the person's conduct "clearly violate[d] the order." Reder v. Miller, 102 So. 3d 742, 743 (Fla. 2d DCA 2012) (quoting Paul v. Johnson, 604 So. 2d 883, 884 (Fla. 5th DCA 1992)); see also Minda v. Ponce, 918 So. 2d 417, 421 (Fla. 2d DCA 2006) ("The prior judge's intent . . .  cannot form the basis of a finding of contempt when that intent was not plainly expressed in the written order."); DeMello v. Buckman, 914 So. 2d 1090, 1093 (Fla. 4th DCA 2005) ("[A] judge cannot base contempt upon noncompliance with something an order does not say." (quoting Keitel v. Keitel, 716 So. 2d 842, 845 (Fla. 4th DCA 1998) (Farmer, J., specially concurring))).

We find no clear error on the face of the record regarding the trial court's first and second findings of contempt, i.e., (1) the Mother's physical and intentional conduct directed toward the Father at the airport, and (2) the Mother's intentional conduct directed toward the Father's girlfriend.  The Father correctly concedes that the trial court's domestication order, which is in our record, and oral ruling did not discuss what to do when the child adamantly refused to leave with him.  Nor does the domestication order discuss the parties' obligations in the event of a failed transfer, beyond cost obligations.

This is not a case like Marcus v. Marcus, 902 So. 2d 259 (Fla. 4th DCA 2005), on which the Mother relies.  In Marcus, the trial court held the mother in contempt for "not taking adequate steps to insure that, when it is the [father's] time with

- 5 -

the children, the father gets to exercise his visitation." Id. at 262.  The transfer failed after the children refused visitation with the father, and the mother refused to physically force the children to go with the father.  Id. at 263.  The Fourth District held that the trial court erred in holding the mother in contempt "[b]ecause the order setting visitation was not sufficiently explicit for the [mother] to determine what her obligation was" when the children simply refused visitation.[1]  Id. at 260, 263.

Unlike the mother in Marcus, the Mother did not simply refuse to physically force the child to board the plane.  The trial court's first and second findings of contempt were not based on the Mother's failure to take adequate steps to ensure visitation where the child refused visitation.  Instead, the trial court recognized at the contempt hearing that the child refused visitation but held the Mother in contempt because she actively interfered with the Father's and his girlfriend's attempts to retrieve the upset child for visitation with the Father.  The trial court's written findings of contempt also focused on the Mother's intentional acts that prevented visitation; it made no mention of the child's refusal to visit the Father.

And, the domestication order required the Mother to return the child to the Father at the airport before the end of spring break.  The order did not allow the parties to refuse to permit visitation simply because the child refused visitation.  Cf. Minda, 918 So. 2d at 421 (holding that trial court erred in finding father in contempt for transferring

---

[1]The Fourth District also held that the mother's conduct did not constitute willfulness where there was no evidence that the mother undermined the father's visitation privileges or prevented the children's visitation.  Id. at 263.  The Mother mentioned this holding in her briefs.  But the holding is not relevant to our disposition because the Mother does not contest the finding of willfulness on appeal and focuses on whether the trial court found contempt based on conduct not expressly prohibited in the trial court's domestication order or oral ruling.

custody of child when child was ill where order did "not allow one party to refuse to permit visitation or to refuse to transfer custody simply because the child [was] ill"). Thus, the Mother may have initially made the child available, but she ultimately prevented the return of the child to the Father, in direct violation of the trial court's domestication order. Quite simply, she did not deliver custody of the child to the Father.

The fact that some of the Mother's conduct was directed at the Father's girlfriend does not affect our disposition; the Father was present at the airport, and his girlfriend's actions were intended to facilitate the Mother's return of the child to the Father. Cf. Cooley v. Moody, 884 So. 2d 143, 144-45 (Fla. 2d DCA 2004) (stating mother could not be held in contempt for failing to leave child with father's wife where order directed mother to turn child over to father and father was not present for custody transfer). Again, the order required the Mother to return the child to the Father.

The trial court's third finding of contempt, failing to attempt to arrange pickup of the child after the failed transfer, was erroneous because the order did not direct the Mother to do so. See id. at 145 ("[T]he trial court erred by proceeding to find the Mother in contempt for failing to make attempts to effectuate the transfer of custody after August 11, 2003. It may have been the trial court's intent that the Mother find an alternative method to transfer custody if the August 11 transfer failed, but there is no language in the trial court's temporary custody order that directs the Mother to do so.").

Therefore, we affirm the trial court's contempt order but reverse and remand for the trial court to strike its finding that the Mother was in contempt for failing to make any attempt to arrange pickup of the child after the failed Paris airport transfer. See Simpson v. Young, 884 So. 2d 186, 188 (Fla. 2d DCA 2004) ("We affirm the order

of contempt, but remand to the circuit court to strike the finding that the Simpsons were in contempt for moving the children to South Carolina.").

Affirmed in part, reversed in part, and remanded with directions.


KELLY and SALARIO, JJ., Concur.